Marcia J. PRINE, Plaintiff,

v.

SIOUX CITY COMMUNITY SCHOOL
DISTRICT, Defendant.

No. C98–4029–MWB.

United States District Court,
N.D. Iowa,
Western Division.

May 1, 2000.

Stanley Munger of Munger, Reinschmidt & Denne, of Sioux City, IA, for plaintiff Marcia J. Prine.

Douglas L. Phillips of Klass, Stoik, Mugan, Villone, Phillips, Orzechowski, Clausen & Lapierre, L.L.P., of Sioux City, IA, for defendant Sioux City Community School District.

### MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S REQUEST FOR FRONT PAY

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND .................................... 1007

II. LEGAL ANALYSIS ............................................... 1007

 A. Prospective Equitable Relief Available Under Title VII .................. 1007
 B. Prine's Request For Prospective Equitable Relief ....................... 1008

 1. Reinstatement ............................................... 1008
 2. Front Pay .................................................... 1010
 3. Calculation of the front pay award ............................... 1013

III. CONCLUSION ................................................... 1015

## I. INTRODUCTION AND BACKGROUND

This lawsuit arose out of plaintiff Marcia Prine's ("Prine") employment with defendant Sioux City Community School District ("School District") as a painter. The case was tried to a jury for nine days, starting on January 24, 2000, and was submitted on February 3, 2000. After deliberating for a portion of two days, the jury returned its verdict on the afternoon of February 4, 2000. The jury found in favor of Prine on her claim of sexual hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and in favor of defendant School District on her claim of sex discrimination. The jury awarded Prine on her sexual hostile work environment claim $10,000.00 in past emotional distress damages, $5,000.00 in future emotional distress damages, back pay in the amount of $123,545.00, past medical expenses in the amount of $5,200.00, and future medical expenses in the amount of $15,300.00.

█ Presently before the court is plaintiff's request for front pay. The Eighth Circuit Court of Appeals has unambiguously instructed that the determination of front pay is an equitable issue for the court. *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 643 (8th Cir.1997). In support of her request for front pay, Prine presented the following evidence that was offered and received at trial: the testimony of her psychiatrist Dr. Muller; the testimony of her expert witness, economist Dr. Ralph Brown; as well as her own testimony. On April 17, 2000, the court held, *inter alia*, an evidentiary hearing to re-open the record so that Prine could admit an updated report by Dr. Brown concerning front pay calculations. Based upon this report, and the other evidence in the record, Prine seeks an award of front pay in the amount of $246,663.00.

The School District has not argued that reinstatement would be appropriate. Indeed, the School District notified the court that reinstatement was not a viable option. Neither has the School District argued that an award of front pay would be improper in this case, nor has the School District challenged the amount of Prine's request for front pay.

With this background in mind, the court will turn first to a succinct review of the prospective equitable remedies available under Title VII. Next, the court will consider which future equitable remedies—if any—should be awarded to Prine in this case.

## II. LEGAL ANALYSIS

### A. Prospective Equitable Relief Available Under Title VII

█ Title VII, like other federal anti-discrimination laws, supplies broad legal and equitable remedies to make successful plaintiffs whole.[1] 42 U.S.C. § 2000e–5; *see also McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 357–58, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (discussing various federal anti-discrimination laws and the means of relief available); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (stating that "[t]he 'make whole' purpose of Title VII is made evident by the legislative history."); *Cowan v. Strafford R–VI Sch. Dist.*, 140 F.3d 1153, 1160 (8th Cir. 1998) (acknowledging the court's obligation "to fulfill the make-whole purposes of Title

---

1. Title VII of the Civil Rights Act of 1964 was amended by the Civil Rights Act of 1991, Pub.L. 102–166, 105 Stat. 1071. *Caviness v. Nucor–Yamato Steel Co.*, 105 F.3d 1216, 1218 (8th Cir.1997). Prior to the 1991 amendments, only equitable relief was available under the Act. *Id.* "Section 102 of the 1991 Act, however, now makes it possible for a successful plaintiff 'to recover compensatory and punitive damages for certain violations of Title VII.'" *Id.* (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 247, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).

VII"). Among the myriad of remedies available to individuals who prevail on their claims of employment discrimination are two alternative types of equitable prospective relief—reinstatement and front pay.[2] *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 641 (8th Cir.1997). These equitable remedies may be awarded to compensate successful plaintiffs for lost future earnings. *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823, 832–33 (3d Cir. 1994). The purpose of and method for calculating these equitable remedies have been characterized in largely the same manner whether relief is sought under Title VII, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, (ADEA), or the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (ADA). *Lussier v. Runyon*, 50 F.3d 1103, 1107–08 (1st Cir.), *cert. denied*, 516 U.S. 815, 116 S.Ct. 69, 133 L.Ed.2d 30 (1995). The choice of which prospective equitable remedy, if either, should be awarded in a given case is committed to the sound discretion of the trial court. *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 555 (8th Cir.1998); *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1458 (10th Cir.1997); *Suggs v. ServiceMaster Educ. Food Management*, 72 F.3d 1228, 1234 (6th Cir.1996); *Standley v. Chilhowee R–IV Sch. Dist.*, 5 F.3d 319, 322 (8th Cir. 1993); *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1056 (7th Cir.1990).

In *Ogden v. Wax Works, Inc.*, 29 F.Supp.2d 1003, 1008–15 (N.D.Iowa 1998), this court provided a comprehensive examination of reinstatement and front pay as remedies for prospective equitable relief available under Title VII, as well as examining the factors considered in ordering reinstatement and in awarding front pay. *Id.* The court, therefore, will not expound upon those remedies and factors extensively here. Rather, the court will address the

remedies and apply the factors that it enumerated in *Ogden* in conjunction with Prine's request for front pay.

### B. Prine's Request For Prospective Equitable Relief

Prine has requested prospective equitable relief in the form of front pay. The starting point for the court's analysis of this request is a consideration of whether the "preferred" remedy of reinstatement is appropriate in this case. *See Newhouse*, 110 F.3d at 641; *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir.1988).

### 1. Reinstatement

 Prine contends that an award of front pay as opposed to reinstatement is the appropriate remedy in this case. The School District asserts that reinstatement is not a viable option in this case. However, before the court may consider the propriety of a front pay award, it must be assured that reinstatement is an infeasible or otherwise inappropriate remedy. *See Williams*, 964 F.2d at 730 (remanding issue of front pay and reminding magistrate judge that front pay should not be awarded "unless reinstatement is impossible or impracticable...." quoting *Wildman*, 771 F.2d at 616). In *Ogden*, this court identified the following factors that are potentially useful in determining whether reinstatement is an appropriate remedy:

(1) whether the employer is still in business, *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1423 (4th Cir.1991); (2) whether there is a comparable position available for the plaintiff to assume, *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 398 (6th Cir.1993), *cert. denied*, 513 U.S. 808, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994); *Duke*, 928 F.2d at 1423; (3)

---

2. The United States Court of Appeals for the First Circuit apparently takes issue with the characterization of reinstatement and front pay as "alternative" remedies. In *Selgas v. American Airlines, Inc.*, 104 F.3d 9, 13 (1st Cir.1997), the court explained that these remedies are not mutually exclusive because "[f]ront pay takes a plaintiff to the point of employability. Reinstatement at that point would, in effect, 'perfect' the remedy because the plaintiff would be back in the very job she lost unlawfully."

whether an innocent employee would be displaced by reinstatement, *Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1254 (5th Cir.1995); *Roush,* 10 F.3d at 398; *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370–71 (7th Cir.1992); (4) whether the parties agree that reinstatement is a viable remedy, *Ray,* 51 F.3d at 1254; *Roush,* 10 F.3d at 398; (5) whether the degree of hostility or animosity between the parties—caused not only by the underlying offense but also by the litigation process—would undermine reinstatement, *Cowan,* 140 F.3d at 1160; *Ray,* 51 F.3d at 1254; *Roush,* 10 F.3d at 398; *Standley,* 5 F.3d at 322; *McKnight,* 973 F.2d at 1370–71; *Lewis v. Federal Prison Indus., Inc.,* 953 F.2d 1277, 1280 (11th Cir.1992) (citation omitted); *Duke,* 928 F.2d at 1423; (6) whether reinstatement would arouse hostility in the workplace, *Cowan,* 140 F.3d at 1160; *Ray,* 51 F.3d at 1254; *Roush,* 10 F.3d at 398; *Standley,* 5 F.3d at 322; *McKnight,* 973 F.2d at 1370–71; *Lewis,* 953 F.2d at 1280; *Duke,* 928 F.2d at 1423; (7) whether the plaintiff has since acquired similar work, *Roush,* 10 F.3d at 398; (8) whether the plaintiff's career goals have changed since the unlawful termination, *McKnight,* 973 F.2d at 1370–71; and (9) whether the plaintiff has the ability to return to work for the defendant employer—including consideration of the effect of the dismissal on the plaintiff's self-worth, *Newhouse,* 110 F.3d at 641; *Lewis,* 953 F.2d at 1280.

*Ogden,* 29 F.Supp.2d at 1010.

### Factors (1)—employer still in business; (2)—comparable position available; and (3)—displacement of innocent employees

■ The first factor in the analysis, the School District's continuation in business, weighs in favor of reinstatement. This is so because the court finds that the School District continues to operate the Operations and Maintenance Department where Prine was employed as a painter. *See Duke,* 928 F.2d at 1423. Similarly, the second factor—the availability of a comparable position—weighs in favor of reinstatement. *See Roush,* 10 F.3d at 398; *Duke,* 928 F.2d at 1423. The court finds that painter positions of the type Prine occupied are still available. Finally, the third factor also weighs in favor of reinstatement because the court finds that Prine's former position has been filled by an employee, Wayne Stoddard, not "innocent" to the creation of the sexual hostile work environment to which Prine was subjected.

### Factor (4)—whether the parties agree that reinstatement is a viable remedy

The fourth factor—whether the parties agree that reinstatement is a viable remedy—weighs substantially against reinstatement. *See Ray,* 51 F.3d at 1254; *Roush,* 10 F.3d at 398; *Best v. Shell Oil Co.,* 4 F.Supp.2d 770, 777 (N.D.Ill.1998) (turning directly to the issue of front pay after acknowledging the parties' agreement that reinstatement was not appropriate). Apparently, the parties agree that reinstatement is not a viable remedy in this case. Because the parties are in the best position to gauge the feasibility or practicality of the remedy of reinstatement, the court will defer to the parties mutual belief that reinstatement is not appropriate in this case.

### Factor (5)—hostility between the parties

The fifth factor concerns the hostility caused by the underlying events as well as the attendant litigation. *See Cowan,* 140 F.3d at 1160; *Ray,* 51 F.3d at 1254; *Roush,* 10 F.3d at 398; *Standley,* 5 F.3d at 322; *McKnight,* 973 F.2d at 1370–71; *Lewis,* 953 F.2d at 1280; *Duke,* 928 F.2d at 1423. Here, there can be no question that the events underlying Prine's claims of sexual hostile work environment and sex discrimination have resulted in a substantial degree of hostility between the parties. Additionally, the court finds that a greater degree of hostility than is normally engendered between litigants is a byproduct of

this lawsuit. These considerations suggest the impropriety of reinstatement, and convince the court that a productive working relationship between these parties would be impossible.

**Factors (6)—hostility in workplace; (7)—plaintiff's acquisition of similar work, and (8)—change in plaintiff's career goals**

The court is mindful that factors such as whether reinstatement would arouse hostility in the workplace, see, e.g., Cowan, 140 F.3d at 1160; whether the plaintiff has acquired similar work, Roush, 10 F.3d at 398; and whether the plaintiff's career goals have changed since the unlawful termination, McKnight, 973 F.2d at 1370–71; may be relevant to the determination of the propriety of reinstatement. However, the court has reviewed the record established in this case and finds that these factors weigh against reinstatement. This is so largely because there is evidence to support them as relevant considerations. There was considerable evidence regarding the impact Prine's reinstatement would have on current employees in the Operations and Maintenance Department. There was also evidence regarding the hostility between Prine and her co-workers—discussed under factor (5) above—and the court concludes that there is a basis from which to infer that Prine's return would in all likelihood arouse hostility at the Operations and Maintenance Department. The court therefore finds this factor to weigh against reinstatement. Also the court finds that Prine has not acquired similar work, because, as will be discussed below under factor (9), Prine is presently unable to work. Therefore, this factor weighs against reinstatement. Finally, there was no evidence regarding a change in Prine's career goals since she was on leave from her job. Thus, the court finds this factor to be neutral in the analysis.

**Factor (9)—plaintiff's ability to return to work for employer**

Perhaps the strongest factor disfavoring reinstatement in this case is the ninth factor—the plaintiff's ability to return to work for the School District. See Newhouse, 110 F.3d at 641; Lewis, 953 F.2d at 1280. Prine testified at length during trial to the devastating impact the events while working as a painter for the School District's Operations and Maintenance Department—and her leave of absence—levied on her self-esteem, self-worth, physical and mental well-being. This testimony was supported by the testimony of Prine's treating psychiatrist, Dr. Muller. Under the circumstances of this case, the court finds this factor to be particularly important. The court finds that Prine has in fact suffered a devastating blow to her self-worth, to her self-esteem, physical and mental well-being aggravated by the actions of the School District. Reinstatement under these conditions would be counter-productive to the School District and an empty remedy to Prine.

Having reviewed the evidence presented both at trial and during the post-verdict evidentiary hearing, the court is left with the firm conviction that reinstatement is not an appropriate remedy in this case. The court will therefore turn to Prine's request for front pay.

**2. Front Pay**

■ Prine seeks front pay in the amount of $246,663.00. Prine arrived at this sum by assuming that she will not work for three years, that she will work twenty (20) hours per week during the fourth year, and full-time from the fifth year until retirement. Also factored into this analysis is the assumption that when Prine does return to work on a full-time basis she will have to find new employment at $7.50 per hour with increases to $8.00 per hour and then levels off. Thus, Prine asserts that her lost wages are $191,-737.00, and when combined with her lost fringe benefits of $54,926.00, the total is $246,663.00. As with the analysis regarding reinstatement, the court will consider factors traditionally approved by other

courts in a front pay determination. The court will therefore consider the following factors that it enumerated in *Ogden* :

(1) the plaintiff's age, *Barbour*, 48 F.3d at 1280; (2) the length of time the plaintiff was employed by the defendant employer, *Standley*, 5 F.3d at 322; (3) the likelihood the employment would have continued absent the discrimination, *Barbour*, 48 F.3d at 1280; *Standley*, 5 F.3d at 322; (4) the length of time it will take the plaintiff, using reasonable effort, to secure comparable employment, *Paolella v. Browning–Ferris, Inc.*, 158 F.3d 183, 194–95 n. 13 (3d Cir.1998); *Kelley*, 140 F.3d at 355 n. 12; *HBE Corp.*, 135 F.3d at 555; *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1141 n. 8 (7th Cir.1994); *Roush*, 10 F.3d at 399; *Standley*, 5 F.3d at 322; *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No.* 101, 3 F.3d 281, 286 (8th Cir.1993); *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1160 (6th Cir.1985); (5) the plaintiff's work and life expectancy, *Paolella*, 158 F.3d at 194–95 n. 13; *Downes*, 41 F.3d at 1141; *Roush*, 10 F.3d at 399; *Shore*, 777 F.2d at 1160; (6) the plaintiff's status as an at-will-employee, *Barbour*, 48 F.3d at 1280; *Schwartz v. Gregori*, 45 F.3d 1017, 1023 (6th Cir.), *cert. denied*, 516 U.S. 819, 116 S.Ct. 77, 133 L.Ed.2d 36, (1995); (7) the length of time other employees typically held the position lost, *Barbour*, 48 F.3d at 1280; (8) the plaintiff's ability to work, *Lewis v. Federal Prison Indus. Inc.*, 953 F.2d 1277, 1281 (11th Cir.1992); *Ortiz v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 852 F.2d 383, 387 (9th Cir.1987); (9) the plaintiff's ability to work for the defendant-employer, *Id.*; (10) the employee's efforts to mitigate damages, *Paolella*, 158 F.3d at 194–95 n. 13; *Barbour*, 48 F.3d at 1280; *Downes*, 41 F.3d at 1141; *Roush*, 10 F.3d at 399; *Shore*, 777 F.2d at 1160; and (11) the amount of any liquidated or punitive damage award made to the plaintiff, *Hadley v. VAM PTS*, 44 F.3d 372, 376 (5th Cir.1995); *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1056 (7th Cir.1990); *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 616 (1st Cir.1985).

*Ogden*, 29 F.Supp.2d at 1015.

### Factor (1)—plaintiff's age

The first factor in the analysis is a consideration of the plaintiff's age. *See Barbour*, 48 F.3d at 1280. At the time of the trial, Prine was forty-eight (48) years old. Prine's expert witness, economist Dr. Brown, testified that because Prine would be over fifty years of age upon re-entry into the work force full-time, the availability of jobs available to her would be severely limited. In support of this statement, Dr. Brown relied on Dr. Muller's recommendation that Prine would not be able to re-enter the work force for at least another four to five years. Because the court is persuaded that Prine is, as Dr. Brown testified, on the upper fringes of middle age moving into what you'd call older in terms of the labor market, the court concludes that Prine's age is a factor that militates in favor of front pay.

### Factor (2)—length of employment

The evidence reveals that Prine was employed by the School District for approximately nineteen (19) years. The court finds that the longevity of Prine's employment with the School District weighs in favor of a front pay award. *See Standley*, 5 F.3d at 322.

### Factors (3)—likelihood plaintiff would have remained in her position; and (6)—plaintiff's status as an at-will-employee

The court recognizes that Prine was an at-will-employee. However, the court finds that absent the sexual hostile work environment, it is highly likely Prine would have remained in her position with the School District for some time to come. Although this factor is subject to some speculation, *see Barbour*, 48 F.3d at 1280; *Standley*, 5 F.3d at 322, the level of speculation is reduced significantly be-

cause of the history of positive employment evaluations Prine received while employed with the School District. Thus, there is no evidence to suggest that the School District was unhappy with Prine's performance or otherwise contemplated or desired her departure. Moreover, undisputed evidence in the record indicates that Prine found her position as a painter for the School District to be fulfilling, and enjoyable. Again, this factor indicates an award of front pay is appropriate. *See Barbour,* 48 F.3d at 1280; *Schwartz,* 45 F.3d at 1023.

### Factor (4)—length of time necessary to secure comparable employment

The court is persuaded that Prine is not only presently unable to work full-time, but is also incapable of performing the duties she performed as a painter for the School District. This factor supports an award of front pay. *See Paolella,* 158 F.3d at 194–95 n. 13; *Kelley,* 140 F.3d at 355 n. 12; *HBE Corp.,* 135 F.3d at 555; *Downes,* 41 F.3d at 1141; *Roush,* 10 F.3d at 399; *Standley,* 5 F.3d at 322. In addition, the court reemphasizes that Dr. Muller testified that it will take Prine approximately four to five years to be able to re-enter the work force full-time. While the court takes issue with the length of time, four to five years, which it addresses below, the court is persuaded that at the present time Prine is unable to work, and unable to go back to her previous position.

### Factors (5)—plaintiff's work and life expectancy; and (7)—the length of time other employees typically held the position lost

The court finds the fifth factor—Prine's life and work expectancy, *see Paolella,* 158 F.3d at 194–95 n. 13—weighs in favor of the front pay analysis. Dr. Brown testified that Prine's work expectancy would be to the age of sixty-one (61), and that Prine's life expectancy would be to the age of eighty-one (81). The court, however, finds the seventh factor—the length of time other employees typically hold the position Prine lost, *see Barbour,* 48 F.3d at 1280—to be neutral in the front pay analysis. There was no testimony regarding the significance of Prine's work. No evidence was presented regarding the length of time other employees typically hold the position Prine lost. Regarding this factor, the court is unwilling to speculate, and therefore, considers it to be a neutral consideration in the determination of the front pay award.

### Factors (8)—ability to return to full-time work; and (9)—ability to return to work for defendant-employer

The court also finds—on the basis of Prine's testimony and the testimony of her psychiatrist—that Prine's ability to work full-time is presently foreclosed by the physical, mental and emotional trauma she continues to suffer as a result of post-traumatic stress disorder. *See Lewis,* 953 F.2d at 1281; *Ortiz,* 852 F.2d at 387; *Eivins,* 660 F.Supp. at 1263. Even if Prine were able to work full-time, the court concludes that under no circumstance is Prine physically, mentally, or emotionally capable of returning to work for the School District—even if such an opportunity were presented. *See Lewis,* 953 F.2d at 1281; *Ortiz,* 852 F.2d at 387; *Eivins,* 660 F.Supp. at 1263.

### Factor (10)—plaintiff's effort to mitigate damages

The court points out the general rule that, although a plaintiff has a duty to mitigate damages, the burden of proof on the mitigation issue rests with the defendant-wrongdoer. *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.,* 156 F.3d 581, 591 (5th Cir.1998); *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1045 (5th Cir.1998); *Booker v. Taylor Milk Co., Inc.,* 64 F.3d 860, 864 (3d Cir.1995). Prine has not worked since her employment with the School District ended, because of her physical and mental condition. The School District has failed to present any evidence that Prine has failed to mitigate her damages. The court concludes that the School District's assertion that the economy is

good, and that jobs are available in the Sioux City area does not satisfy its burden of proof on the issue of mitigation. Even if the School District did present adequate evidence showing that Prine failed to mitigate her damages, the court concluded earlier that Prine is presently unable—physically, mentally, or emotionally—to meet the rigors of any work, much less her previous work. Thus, although this factor is an appropriate consideration in the award of front pay, the court is persuaded that this factor does not weigh against awarding front pay.

### Factor (11)—the amount of any punitive damage award

Because punitive damages were not recoverable in this case, the court need not consider what impact, if any, Prine's punitive damage award has on the analysis of a front pay award.

### 3. Calculation of the front pay award

■ The first step in calculating Prine's front pay award is to determine its proper duration. The court recognizes that a front pay award will contain some degree of speculation. However, the award should not be "unduly speculative." *Barbour,* 48 F.3d at 1280; *McKnight,* 973 F.2d at 1372. Prine has requested front pay for approximately thirteen years. Specifically, Prine asserts that in order to make her whole, she should be compensated for her loss damages through the age of 61. The School District, however, asserts that the appropriate length of front pay in this case should be eighteen (18) months. The School District sets forth the following four points to support its assertion: 1) the emotional distress from which Prine suffers is a result of all the problems in her life with which she has failed to deal; 2) the disparate versions of Dr. Muller's testimony regarding his recommended length of time it would take before Prine could reenter the work force; 3) the repeated refusal of Prine to start therapy; and 4) the

emotional distress from which Prine suffers is not solely attributable to the way she was treated at work.

Mindful that "[t]he longer a proposed front pay period, the more speculative the damages become," *McKnight,* 973 F.2d at 1372, the court is not convinced that Prine's testimony, Dr. Muller's testimony and Dr. Brown's testimony provide an adequate basis to support the length of front pay requested. *See Partington v. Broyhill Furniture Industries, Inc.,* 999 F.2d 269, 273 (7th Cir.1993) (observing that as a general proposition, "[t]he amount of proof required to establish damages will tend ... to be proportional to the amount of damages claimed."). In fact, the court finds that several factors support a reduction in the length of Prine's proposed award.

The court agrees that Prine may well have remained in her position with the School District until she reached the age of sixty-one (61). However, the court is unwilling to adopt this nearly thirteen (13) year figure as a proper approximation for the front pay award because the court finds that it is more likely than not that Prine will secure comparable employment in substantially less time. The court finds speculative Dr. Brown's assertion that Prine will be unable to secure comparable employment, especially because of Prine's educational background. Prine has a teaching certificate and a college degree.[3] Moreover, Prine did not present any evidence, such as the testimony of a vocational expert or a job counselor, to support this claim, and the record does not contain any evidence from which the court could infer such a conclusion. The court is also not convinced, that the port-traumatic stress, as well as any other physical, mental and emotional disorders from which Prine suffers, is solely attributable to the sexual hostile work environment to which she was subjected. The court is convinced that other tragic events that occurred in

---

**3.** Prine graduated cum laude from Briar Cliff College.

Prine's life, particularly finding her father dead after having shot himself with a bullet to the head, also contributed to the ailments from which she presently suffers.

After considering the evidence presented, the court finds that Prine's front pay award request would be unduly speculative and otherwise excessive. The court concludes that a three year full-time front pay award, and an additional three year part-time front pay award would be more appropriate under the circumstances of this case. Three years affords Prine a reasonable amount of time to sufficiently recover from her post-traumatic stress disorder, and other disorders, such that she could re-enter the work force on a part-time basis for an additional three years, after which the court is persuaded that Prine will be able to re-enter the work force on a full time basis. Therefore, an award of three years full-time front pay, and an additional award of three years part-time pay is appropriate because it will strike the proper balance between the need to make Prine "whole" and the need to avoid unduly speculative front pay awards.

The next step is to calculate Prine's estimated yearly income from the School District for these six years, three on a full-time basis and three on a part-time basis. The starting point for this calculation is the base rate Prine would have earned had she remained a painter with the School District. The evidence reflects that the year Prine took an unpaid leave of absence, she was earning an annual rate, assuming no overtime, of $27,014.00. However, Prine was a member of the union, and based on the master contract and the International Union of Operating Engineers (IUOE)–Local 234—contract, Prine claims that her annual earnings rate by January 1, 2000 until January 1, 2003, would have been $29,406.00. The School District does not dispute this figure. Therefore, because the jury returned its verdict in favor of Prine on one claim in the year 2000, the court finds that the proper annual salary for assessing Prine's base compensation is $29,406.00. Multiplying the $29,406.00 figure by six, the court arrives at a sum of $176,436.00. However, because the court determined that in the fourth, fifth, and sixth years, Prine will be able to re-enter the work force on a part-time basis, the $176,436.00 figure must be reduced by Prine's estimated earnings on a part-time basis. Dr. Brown testified that upon re-entry into the work force Prine will be earning initially $7.50 per hour with increases to $8.00 per hour. The court finds that $8.00 per hour is a more appropriate per hourly rate that Prine will earn upon re-entry into the work force, because of her educational background. Therefore, the court finds that Prine's estimated earnings part-time for three years at an hourly rate of $8.00 comes to $24,000.00.[4] Reducing the $176,436.00 by $24,000.00, the court concludes that the total amount of front pay, excluding benefits, comes to $152,436.00.

■ The next matter the court must address is Prine's request for $54,926.00 in fringe benefits. During Dr. Brown's testimony, he delineated the fringe benefits to which Prine was entitled based on the contract. Dr. Brown testified that Prine would have received $273.00 per month in medical insurance, $21.10 per month in dental insurance, $4.80 per month for term life insurance, and that the School District would have contributed 5.75 percent of Prine's gross annual income of $29,406.00 per year to Iowa Public Employee Retirement System. Based on these figures, Prine would have received $5,277.80 in fringe benefits per year. The court finds these benefits are properly considered in a front pay award as part of the compensation package lost to the plaintiff-employee. See Ogden, 29 F.Supp.2d at 1021 (citations omitted). Therefore, multiplying $5,277.80

---

**4.** The annual salary of $29,406.00 represents full-time work based upon a forty (40) hour work week. The court, therefore, determined that part-time work will be based upon a twenty (20) hour work week.

times six, the court arrives at a total sum of $31,666.80 in fringe benefits. Accordingly, the court concludes that Prine is entitled to a front pay award of $184,-102.80. ($152,436.00, which reflects six years of salary minus Prine's estimated part-time earnings for three years at $8.00 per hour, plus $31,666.80, which reflects the total sum of fringe benefits for six years). The court's reason for awarding Prine fringe benefits for the full six years is twofold. First, the court finds that, but for the sexual hostile work environment to which Prine was subjected, Prine would still be employed with the School District. In so doing, Prine would not only continue to receive a salary from the School District, but she would also continue to receive fringe benefits from the School District. Second, the court finds that upon re-entry into the work force on a part-time basis at $8.00 per hour, it is highly unlikely that Prine will receive fringe benefits, thereby foreclosing her ability to mitigate the amount of fringe benefits awarded. This finding is bolstered by Dr. Brown who testified that in these type of jobs, referring to $8.00 per hour part-time jobs, there would be no basic benefits such as retirement systems or health insurance.

The final step in the front pay calculation is to reduce the award to present value. Courts have taken a variety of approaches to the adjustment issue. For example, some courts have required application of "discount tables" to assess the present value of front pay awards. *See, e.g., Suggs v. ServiceMaster Educ. Food Management,* 72 F.3d 1228, 1235 (6th Cir. 1996) (reiterating the need to use the "discount tables" to reduce the amount of the award to present value). Other courts have simply instructed that a proper discount rate be used. *See, e.g., Barbour,* 48 F.3d at 1280 (stating "[a]ll that remained was for [the district court] to determine the appropriate duration of a front-pay award, ... to incorporate any proper salary increases, and then to determine the award's present value using an appropriate discount rate."); *Rhodes,* 82 F.3d at 622

(reaffirming the Fifth Circuit's requirement that "factfinders calculate damages resulting from lost future earnings according to a below-market-discount method."). Another method that has been endorsed by courts is what is known as the "total-offset method." Under this method, no discount to present value is required on the theory that "any interest rate which might otherwise drive a discount would be totally offset by such things as price inflation and real wage increases...." *Newhouse v. McCormick & Co., Inc.,* 910 F.Supp. 1451, 1457 (D.Neb.1996), aff'd. in part and rev'd in part, 110 F.3d 635 (1997); *see also Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 544–46, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983) (discussing the "total offset" approach). A variation of the total-offset approach, approved by the United States Court of Appeals for the Second Circuit, is to refrain from calculating future salary increases into the front pay award, thereby obviating the need to discount the award to present value. *Stratton v. Dep't for the Aging for the City of New York,* 132 F.3d 869, 882 (2d Cir. 1997).

Here, the court finds that given the relatively short duration of the front pay award, any interest that would be earned on the sum will be offset by inflation and future wage increases. Future wage increases have not been accounted for in the calculation. Therefore, the final sum of Prine's front pay award is $184,102.80.

## III. CONCLUSION

The court concludes that the "preferred" equitable remedy of reinstatement is not appropriate under the circumstances in this case given the degree of hostility between the parties, and the plaintiff's inability to work for the defendant-employer. Also, both parties are of the opinion that reinstatement is not a viable option. Accordingly, the court concludes that an award of prospective equitable relief in the form of front pay is warranted in this case

given the plaintiff's length of employment, the likelihood that plaintiff would have remained in her position absent the sexual hostile work environment, the plaintiff's present inability to return to work for the defendant-employer, and the length of time necessary for the plaintiff to secure comparable employment.

Therefore, the court awards Prine **three years of full-time front pay, and an additional three years of part-time front pay** spanning from February 2000 to February 2006, in the sum of **$184,102.80.**

**IT IS SO ORDERED.**