41 A.3d 739 (2012)
425 N.J. Super. 335
Joyce QUINLAN, Plaintiff-Respondent,
v.
CURTISS-WRIGHT CORPORATION, Defendant-Appellant.
Docket No. A-5728-06T1
Superior Court of New Jersey, Appellate Division.
Argued March 10, 2009.
Decided August 11, 2009.
Remanded by Supreme Court December 2, 2010.
Reargued September 26, 2011.
Decided April 5, 2012.
*742 Rosemary Alito argued the cause for appellant (K & L Gates, LLP, attorneys; Ms. Alito, of counsel and on the brief; George Barbatsuly, Newark, on the brief).
*743 Neil Mullin argued the cause for respondent (Smith Mullin, P.C., attorneys; Mr. Mullin and Nancy Erika Smith, Montclair, of counsel and on the brief).
Before Judges A.A. RODRÍGUEZ, SABATINO, and ASHRAFI.
The opinion of the court was delivered by
SABATINO, J.A.D.
This employment discrimination case returns to our court at the direction of the Supreme Court, which resolved certain discrete issues raised by the defendant employer in its petition for certification. See Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 8 A.3d 209 (2010). Specifically, the Court has instructed us "to consider the issues raised by defendant that were not previously addressed" in our earlier opinion in Quinlan v. Curtiss-Wright Corp., 409 N.J.Super. 193, 218, 976 A.2d 429 (App.Div.2008), which the Court reversed in part in its own decision.
Having considered the record anew, including the parties' further submissions following the Supreme Court's opinion, and with the benefit of additional oral argument, we affirm the judgment of liability for plaintiff but remand for a new trial on some elements of the damages awarded. In particular, we conclude that the trial court's jury instructions on front pay erroneously imposed a burden upon defendant to prove that plaintiff would not mitigate her damages in the future after the 2007 trial. The jury charge also failed to make explicit that plaintiff bore the burden of specifically establishing the likely duration of her future shortfall in earnings.
For the reasons we explain, those shortcomings in the jury instructions are largely attributable to the absence of a model charge on front pay and the dearth of New Jersey case law squarely addressing the applicable burdens of proof concerning such relief. The front pay award therefore must be vacated and that issue tried again, with updated proofs on plaintiff's efforts since 2007 to mitigate her damages and with proper jury instructions. Moreover, the quantum of punitive damages and counsel fees reflected in the final judgment must also abide the outcome of a retrial on front pay, as well as any appropriate back pay calculated from the time of the 2007 trial. In all other respects, the final judgment is affirmed.

I.
The pertinent facts and procedural history are detailed extensively in the prior opinions of this court and the Supreme Court. We provide the following as context for our analysis.
Plaintiff Joyce Quinlan began working for defendant Curtiss-Wright Corporation in 1980 as a benefits analyst in the company's Human Resources ("HR") department. By 1999, she had been promoted to executive director of that department. In that capacity, plaintiff reported directly to the company's president and chief executive officer, Martin Benante.
In January 2003, the company promoted a male employee, Kenneth Lewis, to the position of Corporate Director of Human Resources and Management Development. As a result of Lewis's promotion, he became plaintiff's immediate supervisor, even though he had less HR experience than she did. Perceiving that the company had discriminated against her and that, moreover, it was engaged in widespread gender discrimination, plaintiff assembled numerous internal company documents that contained confidential employee information. She gave copies of those documents to the lawyers who were representing her interests against the company.
*744 In November 2003, plaintiff filed a complaint against defendant, alleging numerous violations of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -42. Among other things, the complaint alleged that the company had illegally failed to promote plaintiff because of her gender, had engaged in a general pattern and practice of gender discrimination within the company, and had discriminated against her with respect to her wages and salary. Plaintiff sought various forms of monetary relief, including back pay, front pay, and punitive damages. She demanded a jury trial on all issues.
During the course of discovery, plaintiff's attorneys supplied defense counsel with a set of the internal records that plaintiff had copied from the company's files. Subsequently plaintiff, in her capacity as the executive director of HR, received a copy of Benante's confidential performance review of Lewis for the period ending in April 2004 ("the Lewis appraisal"). Plaintiff's counsel confronted Lewis with the appraisal at his deposition in May 2004. That prompted defense counsel to object on the deposition record with respect to plaintiff's unauthorized conduct concerning that document. Shortly thereafter, the company terminated plaintiff in June 2004. Plaintiff then amended her complaint to add a claim of retaliatory discharge. Discovery was completed, and the case proceeded to trial.
After a deadlocked jury at the first trial in 2006 resulted in a mistrial, the case was tried again in January and February 2007. The same trial judge presided. The second jury returned a verdict in plaintiff's favor on her lost promotion and retaliation claims.
The jury awarded plaintiff an aggregate sum of $4,565,479 in compensatory damages. That sum consisted of $33,825 in additional pay that plaintiff would have earned from June 2003 through June 2004 if she had been promoted instead of Lewis; $187,128 in emotional distress damages for the period from June 2003 through June 2004; an additional $218,316 in emotional distress damages for the period from June 2004 to the time of trial in 2007; $475,892 in past economic losses, including back pay, for the period from June 2004 to the time of trial; and $3,650,318 in future (i.e., post-trial) economic losses, including front pay. The jury awarded plaintiff no damages for prospective emotional distress. Upon hearing further proofs, the jury also awarded plaintiff $4,565,479 in punitive damages, a figure that matched the aggregate award for compensatory damages.
The trial court denied defendant's post-trial motions seeking relief from the verdict on various grounds. The court then awarded plaintiff prejudgment interest of $44,363, counsel fees pursuant to the LAD of $1,398,796, and $75,000 in compensation for negative tax consequences. A corresponding final judgment was entered against defendant for $10,649,117.
On August 11, 2009, a different panel of this court reversed and remanded the case for retrial on the retaliation verdict. Quinlan, supra, 409 N.J.Super. at 210-11, 976 A.2d 429. That decision concluded that the jury charge on retaliation had incorrectly distinguished between plaintiff's unauthorized taking of the internal confidential documents and her counsel's allegedly protected use of those documents at the Lewis deposition. Id. at 208-11, 976 A.2d 429. The decision also set aside the punitive damages award because there was insufficient proof of egregious behavior on the part of the employer. Id. at 217, 976 A.2d 429.
This court's previous opinion, however, affirmed the trial court on several discrete issues that defendant had raised on appeal. Among other things, the prior opinion rejected *745 defendant's argument that plaintiff had failed to establish a prima facie claim of retaliation. Id. at 212-14, 976 A.2d 429. We also upheld (1) the trial court's denial of a mistrial after plaintiff's opening argument; (2) its post-trial denial of defendant's motion to remit the emotional distress damages; (3) the propriety of the award for adverse tax consequences; and (4) other miscellaneous rulings. See id. at 215, 217-18, 976 A.2d 429. Our decision declined to reach other issues that were dependent upon the outcome of a retrial. Id. at 218, 976 A.2d 429. This court therefore remanded the case for further proceedings as to the open issues. Ibid.
In December 2010, the Supreme Court reversed this court's rulings as to the jury charge on retaliation and the punitive damages award. Quinlan, supra, 204 N.J. at 277, 8 A.3d 209. The Court majority adopted plaintiff's argument that her attorney's use of the appraisal at the Lewis deposition, even though plaintiff had improperly copied that appraisal from confidential files, was protected conduct under the LAD. Id. at 272-73, 8 A.3d 209. The Court reached that conclusion after fashioning and applying a multi-part test to evaluate the confiscated-document issue.[1] The Court held that the trial court had acted correctly in advising the jury that plaintiff's conduct in taking the internal documents was improper and that her employer was free to terminate her for doing so. Id. at 273, 8 A.3d 209. Nonetheless, the jury was properly asked to decide whether the employer fired her for that reason or instead fired her in retaliation for pursuing her claims of discrimination. Ibid.
Based on this analysis, the Court reinstated the verdict for plaintiff on the finding of retaliation, noting that such liability was "amply supported by the evidence." Ibid. The Court further concluded that there was sufficient proof of defendant's egregious conduct for the trial court to have submitted the question of punitive damages to the jury. Id. at 273-77, 8 A.3d 209.
In a footnote in its opinion, the Court declined to consider other unresolved issues that the employer had raised on appeal because the petition for certification had challenged only this court's decisions on retaliation and punitive damages. Id. at 253 n. 3, 8 A.3d 209. The Court thereafter issued an order referring those open issues to this court for disposition.

II.
We first address defendant's contention that the trial court erred in admitting into evidence the objection that defense counsel had interposed at the Lewis deposition about the copy of his appraisal that plaintiff had removed from the company's files. The court permitted the transcript containing defense counsel's objection to be read aloud to the jury. However, the court also provided a curative charge, which defense counsel assented to, explaining that an attorney has the right to make an objection at a deposition and that counsel had done nothing wrong by objecting. *746 Defendant maintains that the trial court wrongfully denied its motion for a new trial which, in part, was predicated on this issue.
This court's prior opinion addressed this issue as follows:
We agree with defendant that plaintiff's counsel should not have been permitted to read the text of that objection as evidence to the jury. Defense counsel was asserting a legal position on behalf of her client, as she was obligated to do in representing defendant. Further, it was improper for plaintiff's counsel to later use that objection in summation as proof of Benante's state of mind. We would also expect those remarks not to be repeated.
[Quinlan, supra, 409 N.J.Super. at 215, 976 A.2d 429.]
Defendant now contends that even though this court's decision was reversed by the Supreme Court on other grounds, it is entitled to a new trial by virtue of the misuse of the deposition objection. We disagree.
Significantly, when our court considered this issue in Quinlan, we did not state that the reading of the transcript containing the objection and plaintiff's related summation, required the liability verdict to be set aside. Instead, this court's sole expressed basis for ordering a retrial on liability was its conclusion that the jury charge on retaliation was flawed. Id. at 205-11, 976 A.2d 429.
This court's prior discussion concerning the evidential use of defense counsel's objection, and the comments of plaintiff's attorney about that objection in his summation, appeared immediately after a paragraph addressing a separate contention by defendant. That paragraph concerned a remark by plaintiff's counsel in his opening about certain billing records, which defendant had contended was unduly prejudicial and had caused reversible error. Id. at 214-15, 976 A.2d 429. In its discussion of that billing issue, this court agreed with defendant that the summation remark was improper. Id. at 215, 976 A.2d 429. Nonetheless, our decision upheld the trial court's refusal to grant a mistrial on that basis. Ibid. We noted, however, an expectation that the remark would "not be repeated" by plaintiff's counsel at a retrial. Ibid. We then issued a similar admonition concerning plaintiff's arguments to the jury concerning the objection at the Lewis deposition, again stating that "[w]e would also expect those remarks not to be repeated." Ibid.
Notably, this court's prior opinion did not declare the trial court's mistaken rulings concerning the deposition objection to be sufficiently harmful, in their own right, to warrant a new trial. Nor did our court find cumulative error. Cf. Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 55-56, 974 A.2d 1070 (2009) (illustrating cumulative error). Instead, our decision simply expressed disagreement with the manner in which those particular issues had been handled by the trial court. This court did not say that those errors rose to a level of prejudice that would warrant a new trial. From our own further review of the record, we are not persuaded to elevate those issues to greater importance than they were accorded by this court in our prior opinion.
As Justice Hoens wrote for the Court majority:
The trial court correctly told the jury that plaintiff's act of taking the documents, including the Lewis appraisal, was not protected and that the employer was free to terminate her for doing so. In its charge, the trial court asked the jury to decide whether the employer fired her for taking the documents or for *747 pursuing her claim that the failure to promote her was discriminatory. Our application of our balancing test compels us to conclude that the trial court's approach was the correct one. When presented with that question, the jury found for plaintiff, concluding that she was the victim of retaliatory discharge. We find no warrant to interfere with that finding.

[Quinlan, supra, 204 N.J. at 273, 8 A.3d 209 (emphasis added).]
After duly considering the parties' arguments in the aftermath of the Supreme Court's opinion, the governing law, and the record as a whole, we likewise "find no warrant to interfere" with the trial court's overall handling of the panoply of issues relating to the Lewis appraisal and the other internal documents. That includes, despite the errors involved, the evidential use of defense counsel's objection and the associated remarks of plaintiff's attorney in summation. Nor are we persuaded to interfere with the jury's ultimate finding of retaliation. Defendant's arguments do not amount to a demonstration of a miscarriage of justice tainting the entire verdict. See R. 2:10-1.
To the extent that defendant has raised other arguments seeking to set aside the liability verdict that were not clearly disposed of in the prior opinions of this court and the Supreme Court, we conclude those arguments lack sufficient merit to warrant discussion. See R. 2:11-3(e)(1)(E). The liability determination is consequently affirmed.

III.

A.
We turn to the significant issues relating to the front pay award. In doing so, we are mindful that the jury's grant of $3,650,318 in future economic losses to plaintiff, including front pay, was clearly the largest component of the $4,565,479 compensatory award. The propriety of that front pay award and the adequacy of the jury instructions on that major issue are therefore critical aspects of the appeal.
We begin with some general principles. Because the case law in our State discussing front pay is limited, we refer to several authorities on the subject from other jurisdictions and sources.
"Front pay" is a concept that attempts to project and measure the ongoing economic harm, continuing after the final day of trial, that may be experienced by a plaintiff who has been wrongfully discharged in violation of anti-discrimination laws. Donelson v. DuPont Chambers Works, 206 N.J. 243, 251 n. 9, 20 A.3d 384 (2011). Front pay is a remedy that has been awarded at times in cases arising under federal and state anti-discrimination laws, in keeping with the principle that a perpetrator of discrimination should make the victim of its illegal acts "whole." See, e.g., Suggs v. ServiceMaster Educ. Food Mgmt., 72 F.3d 1228, 1233 (6th Cir.1996); Hudson v. Chertoff, 473 F.Supp.2d 1292, 1301 (S.D.Fla.2007).
Front pay is conceptually related to, but slightly different from, the notion of damages awarded to a plaintiff for lost future earnings in a tort case. See, e.g., Caldwell v. Haynes, 136 N.J. 422, 433-34, 643 A.2d 564 (1994); Model Jury Charge (Civil) 8.11C, "Loss of Earnings" (2010). In Williams v. Pharmacia, Inc., 137 F.3d 944, 953-54 (7th Cir.1998), the Seventh Circuit observed that front pay generally compensates for the immediate loss of the position until the position would have ended or the employee would have left the company, while lost future earnings, a broader concept, compensates for the diminution in earning capacity caused by the *748 discrimination. Because lost future earnings encompasses loss to reputation, those damages can remain with the employee long into the future, given that the reputational loss can diminish her future ability to obtain employment. Id. at 954.
Although federal and state courts are not uniform, front pay has been recognized in many jurisdictions as a permissible method of addressing the anticipated post-trial harm to a former employee growing out of an employer's discriminatory practices. See generally Brian H. Redmond, "Award of Front Pay Under State Job Discrimination Statutes," 74 A.L.R.4th 746 (1989) (canvassing front pay cases); see also Anne-Marie C. Carstens, "The Front Pay Niche: Reinstatement's Alter Ego is Equitable Relief for Sex Discrimination Victims," 88 Geo. L.J. 299 (2000).
Case law in our State has similarly recognized the availability of front pay as a potential source of recovery in employment discrimination and wrongful discharge cases. See, e.g., Donelson, supra, 206 N.J. at 258-59, 20 A.3d 384 (noting the availability of front pay in cases brought under the LAD and the Conscientious Employee Protection Act, "provided there is sufficient proof both to establish that the injury will impair [the plaintiff's] future income and to quantify the lost income"); Picogna v. Bd. of Educ. of Twp. of Cherry Hill, 143 N.J. 391, 403, 671 A.2d 1035 (1996) (noting this court's holding that a discharged educator could recover front pay for a "reasonable" period after his discharge); Lehmann v. Toys `R' Us, 132 N.J. 587, 617, 626 A.2d 445 (1993) (noting that "back pay and/or front pay" are among the remedies available under the LAD for a plaintiff subjected to a hostile work environment and sexual harassment).
A number of jurisdictions have turned to front pay as an alternative remedy to the reinstatement of an employee who has been discharged or forced to resign because of an employer's discrimination, in situations where reinstating that worker to a job with the employer is either not appropriate or not feasible, because of mutual animosity or other factors. See, e.g., Newhouse v. McCormick & Co., 110 F.3d 635, 641-42 (8th Cir.1997); Suggs, supra, 72 F.3d at 1233; Thayer v. E. Maine Med. Ctr., 702 F.Supp.2d 17, 18 (D.Me.2010); Ackerman v. W. Elec. Co., 643 F.Supp. 836, 856 (N.D.Cal.1986), aff'd, 860 F.2d 1514 (9th Cir.1988); Gilliland v. Missouri Athletic Club, 273 S.W.3d 516, 524 (Mo. 2009); Peters v. Rivers Edge Mining, Inc., 224 W.Va. 160, 680 S.E.2d 791, 811 (2009); Civil Service Comm'n v. Comm'n on Human Rights & Opportunities, 195 Conn. 226, 487 A.2d 201, 203-04 (1985); see also Redmond, supra, 74 A.L.R.4th at § 4[a] and [b].
Our case law in New Jersey has treated front pay as a remedy that may be awarded by a jury. See, e.g., Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 135, 735 A.2d 548 (1999); Baker v. Nat'l State Bank, 353 N.J.Super. 145, 161, 801 A.2d 1158 (App.Div.2002).[2]
*749 There are varying formulations of the relevant factors that bear upon calibrating an award of front pay. Generally, it will not automatically be presumed that the plaintiff formerly employed by the defendant would have worked for that employer for the remainder of his or her life if the discrimination or improper conduct had not occurred. On the other hand, it is equally illogical to presume that the employee, absent discrimination, would not have continued to work for the employer for some period of time after the date of trial, unless there are facts or circumstances to warrant such a presumption.
A useful formulation of the relevant considerations was expressed by the Sixth Circuit in Suggs, supra, 72 F.3d at 1234, as follows:
Generally, in awarding front pay, the following factors are relevant: (1) the employee's future in the position from which she was terminated; (2) her work and life expectancy; (3) her obligation to mitigate her damages; (4) the availability of comparable employment opportunities and the time reasonably required to find substitute employment; (5) the discount tables to determine the present value of future damages; and (6) `other factors that are pertinent in prospective damage awards.'
[Quoting Fite v. First Tenn. Prod. Credit Ass'n, 861 F.2d 884, 893 (6th Cir. 1988).]
In Anastasio, the Third Circuit similarly described the relevant factors to include the plaintiff's "work and life expectancy" and his or her anticipated efforts to mitigate damages. Anastasio, supra, 838 F.2d at 709. The Third Circuit further observed that "[t]he purpose of front pay under the [federal age discrimination statutes] is to ensure that a person who has been discriminated against on the basis of age is made whole, not to guarantee every claimant who cannot mitigate damages by finding comparable work an annuity to age 70." Ibid.
A proper assessment of front pay requires a thoughtful balancing of these relevant factors. It also entails a sensitivity to the competing interests of the employee, on the one hand, in being made whole and the employer, on the other hand, in being spared the duty to subsidize a prospective windfall.
Frequently, other appellate courts have expressed caution that front pay awards not be based upon speculation. See, e.g., McKnight v. Gen. Motors Corp., 973 F.2d 1366, 1372 (7th Cir.1992) (noting that front pay awards may not be "unduly" speculative), cert. denied, 507 U.S. 915, 113 S.Ct. 1270, 122 L.Ed.2d 665 (1993); but see Blum v. Witco Chem. Corp. 829 F.2d 367, 375 (3d Cir.1987) (holding that the issue of speculativeness is more imaginary than real because courts have been determining future losses in personal injury cases for years). We have embraced similar principles in New Jersey, proscribing damage awards that are based upon speculation. See, e.g., Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 375, 25 A.3d 221 (2011); Lane v. Oil Delivery, Inc., 216 N.J.Super. 413, 420, 524 A.2d 405 (App. Div.1987); see also Model Jury Charge (Civil) 1.12(O), "Damages" (1998) (advising jurors that "[d]amages may not be based on conjecture or speculation").
Front pay awards may often depend on factors that are unknowable and *750 often subject to change, such as future market trends, a plaintiff's employability, and whether the plaintiff would have remained in the same position if not for the discrimination. See Mathieu v. Gopher News Co., 273 F.3d 769, 782 (8th Cir.2001). As such, judges and juries are faced with the difficult task of trying to make a victim of proven discrimination whole, while not crafting an award that is unduly speculative. Thus, when a plaintiff is awarded front pay, the award must be reasonably specific with respect to duration and amount. Suggs, supra, 72 F.3d at 1235.
Although at least one federal circuit court has developed model jury instructions for front pay awards,[3] our State thus far has not promulgated such model instructions on front pay. In the present case, the trial court issued certain instructions that addressed front pay and the related concept of back pay, after considering the input of counsel at both the first and second trial. The charge on front pay from the first trial was substantially repeated at the second trial that produced the jury's verdict and, in particular, the $3.65 million future component of the award. We present relevant portions of that charge here, by necessity at some length, as a predicate to our analysis.
First, the judge issued instructions pertaining to plaintiff's claim for damages for the period from June 2003 through June 2004 on her "lost promotion" claim. Even though we are sustaining the lost promotion damages awarded, we repeat pertinent sections of that charge here because some of the general concepts bear upon the charge's later explanation of back and front pay:
In the event that you find Joyce Quinlan has proved any claim against Curtiss-Wright by a preponderance of the evidence, then you must determine the amount of damages that she has sustained with respect to the claim, if any. She has the burden of establishing by a preponderance of the credible evidence each item of damage that she claims. She must also prove that the damages were the natural and probable consequences of Curtiss-Wright's actionable conduct.
. . . .
Curtiss-Wright's actionable conduct must have been a proximate cause of Joyce Quinlan's damages. By "proximate cause" I mean that Joyce Quinlan must prove by a preponderance of the credible evidence that Curtiss-Wright's failure to promote or retaliation, as the case may be, played a substantial role in bringing about or in actually causing her damages by either directly causing it or by setting in motion a chain of readily foreseeable events that caused such damages.

If you find for Joyce Quinlan, she is entitled only to damages in an amount that will reimburse her for her losses that she can show actually resulted from Curtiss-Wright's conduct. Damages may not be based on speculation or conjecture. Joyce Quinlan must prove the amount of the damages by a preponderance of the credible evidence. Joyce Quinlan is not entitled to any damages that would place her in a better position than if she had received the promotion she claims she was denied, if you find for Joyce Quinlan on her lost promotion claim, or if she had not been terminated, if you find for Joyce Quinlan on her retaliatory discharge claim. Joyce Quinlan is not entitled to a windfall. If she succeeds in proving one or both of her *751 claims, however, she is entitled to recover all damages you find she has proven as to that claim or those claims she has proven, provided she has proven that those damages were proximately caused by Curtiss-Wright's illegal discrimination or retaliation.
Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. In all instances you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts in [e]vidence. You may not speculate or guess. It is Joyce Quinlan's burden to pro[ve] to you by a preponderance of the credible evidence what her actual damages are, if any.

If you find that Joyce Quinlan was not promoted to the position of corporate director of human resources and management development because of her sex, you may award her damages in an amount equal to the difference between what she would have earned at Curtiss-Wright had she been promoted to the position of corporate executiveof corporate director of human resources and management development in June of 2003 and the amount that she actually earned as an employee of Curtiss-Wright from June 2003 to June 1st, 2004. You will also be asked to determine the amount of economic damages, if any, for the period June 1, 2004 to today.
[Emphasis added.]
After these general instructions on damages and the lost promotion claim, the court specifically addressed back pay:
If you find that Joyce Quinlan is entitled to recover on account of her having been wrongfully fired, you must next calculate the amount of back pay to which Miss Quinlan is entitled. To do this you must first determine how much money Joyce Quinlan would have earned from her employment with Curtiss-Wright during the back pay period, if she had not been discharged. This assumes that she was not promoted to the position of corporate director of human resources and management development in June of 2003. The back pay period is the time between the date of Joyce Quinlan's termination from Curtiss-Wright on June 1, 2004 to the present date.
In calculating the amount of back pay, if any, to which Joyce Quinlan may be entitled, you should not add interest to such an award. I will determine the question of whether Joyce Quinlan may recover interest on any back pay award and, if so, the amount as a matter of law.
Then, the court described for the jurors the concept of front pay, as follows:
Next you must consider whether it is appropriate to award Joyce Quinlan front pay, that is, damages that would compensate her for any of the future effects of Curtiss-Wright's allegedly discriminatory non-promotion or retaliatory discharge. When I use the term, "future effects," I mean from today on. As with back pay damages, Joyce Quinlan has the burden of establishing entitlement to front pay by a preponderance of the credible evidence. In determining whether such damages are appropriate for Joyce Quinlan, understand that the law does not require of you mathematical exactness. On the other hand, you may not speculate. The law does not allow recovery from possible future consequences. They must be reasonably probable to follow.

If you decide to award front pay, you must remember that front pay should be limited to the reasonable period required for Joyce Quinlan to reestablish *752 her rightful place in the job market. In other words, front pay is generally appropriate only for a period of time necessary for a person to get back into a similar position with a substantially similar pay.
....
You have heard an expert discuss the present value of Joyce Quinlan's future earnings loss, including their projections of the future interest, including its tax consequences and inflation rates. You may consider some, all or none of the opinions of the expert in determining a fair figure to compensate Joyce Quinlan for her future lost earnings. The expert has also given you his bottom line figures as to Joyce Quinlan's future lost earnings. As I previously told you, you need not give any of these bottom line figures automatic acceptance. You are free to determine, based upon all the evidence, including the expert testimony you choose to accept, what amount of dollars will fairly compensate Joyce Quinlan for her future lost earnings.

Once again, it is Joyce Quinlan's burden to prove by a preponderance of the credibleof the evidence her gross income and the probable loss of future earnings. In deciding what Joyce Quinlan's future losses are, understand that the law does not require of you mathematical exactness. Rather, you must use sound judgment based upon reasonable probability.
[Emphasis added.]
Thereafter, the court instructed the jury on a pivotal issue before us, simultaneously addressing plaintiff's duty to mitigate damages with regard to both back pay and front pay:
If, in accordance with the principles of law previously given to you, you find that Curtiss-Wright is liable to Joyce Quinlan for damages which include back pay or front pay, you are to reduce the amount awarded by all income which Joyce Quinlan either earned, could have earned or will probably earn from comparable employment, if she had used or uses reasonable and diligent efforts to obtain such a position.
The back pay and front pay damages are to be reduced by earnings that Joyce Quinlan earned, could have earned or will probably earn because the law requires that Joyce Quinlan used reasonable and diligent efforts to mitigate or minimize the damagethe amount of damages she has or will likely sustain.
In this case Curtiss-Wright asserts that Miss Quinlan failed to mitigate her damages by failing to properly seek comparable employment. Although the duty is imposed on Joyce Quinlan to mitigate her damages, the burden of proof to show her failure to mitigate, if any, is on Curtiss-Wright. This means that Curtiss-Wright was required to present credible evidence which leads you to believe that it is more likely than not that Joyce Quinlan failed to reasonably mitigate or minimize her damages.

Curtiss-Wright may establish this by introducing evidence that, one, Joyce Quinlan made no effort or reasonable effort or no reasonable efforts to secure comparable employment and, two, other employment opportunities comparable to her job at Curtiss-Wright were available in the region that were comparable to the position from which she was terminated.

Joyce Quinlan may refute Curtiss-Wright's allegations by showing that she used reasonable and diligent efforts and was still unable to secure a comparable job, that comparable employment did not exist or her particular circumstances *753 did not justify the existence of a dissimilar job.

In deciding whether a job is comparable, generally you must consider the nature of the responsibilities, skills required, rate of pay and the location. Joyce Quinlan need not accept employment which is unsuitable and demeaning when compared with the job she lost.
In determining what jobs are comparable, you may consider the following other factors. Joyce Quinlan's work experience and prior earnings, Joyce Quinlan's length of unemployment, Joyce Quinlan's prospects in securing local work in her customary occupation, distance of the available work from Joyce Quinlan's residence.

Income you must deduct from Joyce Quinlan's back pay and front pay damages include income the [p]laintiff earned or is likely to earn from other employment following her termination from Curtiss-Wright, as well as all her other income she would not have received had she still been employed by Curtiss-Wright. This means Joyce Quinlan had and continues to have an obligation to use reasonable and diligent efforts to seek other comparable employment and to accept it if it were offered.
You are to bear in mind the concept of job comparability is not a static or stationary one. Instead, it may change with the passage of time and the state of the job market.
[Emphasis added.]
Finally, the court addressed plaintiff's obligation to "lower her sights"[4] if she is unable to find comparable employment:
This means that if Joyce Quinlan had used diligent efforts over a reasonable period of time and has still been unable to obtain a position which is comparable, then she is required to lower her sights.
Lowering one's sights means that with the passage of time and the lack of success in finding a comparable job Joyce Quinlan must begin considering jobs that offer lower pay or require different types of skills and responsibilities or [are] in more distant location[s].
However, the doctrine of lowering one's sights should not be automatically applied. And in addition to the passage of time, you should consider Joyce Quinlan's individual circumstances, including but not limited to other skills and qualifications of the person, whether the person's family status reasonably justifies enlarging [the] geographic area wherein work was sought, amount of salary reduction, type of alternate employment and the impact of those factors on Joyce Quinlan's future.
If you find that Joyce Quinlan lowered her sights too soon by accepting significantly lower-paying work too soon after her termination, you may reduce her back pay award on the grounds that she willfully incurred a loss by accepting an unsuitably lower-paying position.
If you conclude the award of back pay or front pay to Joyce Quinlan should be reduced, the amount of the reduction should be the amount of the greater, one, Joyce Quinlan's actual or probable earnings or, two, the earnings Miss Quinlan should have earned if she had not lowered her sights, if you find it was unreasonable for Joyce Quinlan to stop looking for further employment after she lowered her sights.
*754 On appeal, defendant argues that these instructions were flawed and that the jury's award of over three million dollars in front pay in this case is excessive and not rationally supported by the evidence. It argues that plaintiff's evidence of her inability to obtain a comparable job was insufficient and that her damages should have been cut off when she stopped seeking replacement employment. Defendant further argues that the trial court erred in admitting the front pay projections and related charts of plaintiff's expert economist, Dr. Matityahu Marcus. Defendant also contends that front pay in this case is precluded by the so-called "after-acquired evidence" doctrine.

B.
We begin our analysis by focusing upon a critical flaw in the front pay jury instruction: the trial court's imposition of a burden upon defendant to prove that plaintiff will not mitigate her economic damages in the future. As we have noted, the court told the jurors that defendant not only had the burden of proving plaintiff's failure to mitigate damages in the past with respect to back pay, but also bore that same burden to prove that she will fail to mitigate her future losses with respect to front pay. In doing so, the court's instruction on mitigation blended the past tense with the future tense. For example, at some points the charge utilized the past tense, instructing that defendant "was required to present credible evidence which leads you to believe that it is more likely than not that [plaintiff] failed to reasonably mitigate or minimize her damages." (Emphasis added). At other points in the same charge, however, the court melded the past with the future, twice alluding to sums that plaintiff "could have earned or will probably earn" and also to income that plaintiff "earned or is likely to earn from other employment[.]" (Emphasis added).
Plaintiff's attorney spotlighted this burden-allocating aspect of the mitigation charge in his summation, emphasizing to the jury that:
On this issue of her finding future employment. The Court is going to read you a charge on mitigation of damages. You are going to hear thatyou know, whereas I have the burden of proof on all these [other] elements, my job is to prove these, right. On mitigation, the company has the burden of proof; that is, if the company wants to claim that my client hasn't done a good enough search for a job, the company has the burden of proving that.

[Emphasis added.]
Hence, both the jury charge and plaintiff's summation expanded defendant's burden. Not only was defendant required to prove plaintiff's past failure to mitigate her losses, it was also required to prove that plaintiff will fail to mitigate them in the future.
During the charge conferences at both the first trial and the second trial, counsel sharply debated whether, as a matter of law, defendant bears the burden of proving plaintiff's failure to mitigate damages in the future. Plaintiff argued that the employer's burden of proof extends to such future mitigation, and defendant argued that it does not. Each side relied on several cases, none of which directly and unambiguously resolve this unsettled issue under the LAD. After considering the parties' legal disagreement on this subject at the first trial, the court ruled that defendant bore the burden of proving an anticipated failure by plaintiff to mitigate her future damages. In making that ruling, the court referred to several federal opinions that appeared to place such a burden upon the defense in other employment cases, including Bianchi v. City of Philadelphia, 80 Fed.Appx. 232 (3d Cir.2003); *755 Robinson v. Southeastern Pennsylvania Transportation Authority, 982 F.2d 892 (3d Cir.1993); Anastasio, supra, 838 F.2d at 701; and Prine v. Sioux City Community School District, 95 F.Supp.2d 1005 (D.Iowa 2000).
The court's instruction placed the onus on defendant to prove something that is inherently very difficult to prove that plaintiff will fail to mitigate future damages that have not yet even occurred. Satisfaction of the duty to mitigate damages is largely volitional. A plaintiff may choose to maximize her future earnings after trial, or she may choose not to do so. To be sure, future mitigation may also be affected by factors beyond a plaintiff's control, such as a poor job market or declining health. But the former employer has no control over those future variables either. A jury in 2007 could not safely predict whether a plaintiff would or would not take prospective steps in 2008, 2009, and in the years beyond, to pursue and maintain higher-paying employment. By definition, the future has not yet arrived.
The jury was thus asked to consider a hypothetical offset that would only reduce plaintiff's front pay claim if one were to imagine that she would, in essence, "sit on her hands" in the future. It was unfair to place such a burden of persuasion upon defendant and make it exclusively bear the risks of the unknown as to whether plaintiff will, in fact, endeavor to mitigate her damages long after a verdict is rendered, and long after she has collected on her judgment. The employer should not be placed in the prohibited realm of speculation to meet that sort of burden.
By contrast, it makes sense to require a defendant to bear the burden of proof as to whether a plaintiff has fulfilled her duty to mitigate past losses, as in the instance of back pay. There is a track record of conduct to evaluate in that setting. Defendant can learn about plaintiff's past efforts to mitigate in pretrial discovery and then marshal appropriate proofs on the subject at trial. For this reason, our model charge on back pay places the burden of persuasion upon the defendant to establish, retrospectively, plaintiff's past failure to mitigate damages. See Model Jury Charge (Civil) 2.33, "Wrongful Discharge; Mitigation of Economic Damages" (1993). It is inappropriate, however, to extend that burden of persuasion to future losses, including front pay.[5]
The purpose of placing burdens of persuasion in our civil justice system is to allocate the risks of non-persuasion fairly, in light of the evidentiary context involved and the difficulties in obtaining competent proof on a particular subject.[6] Here, it was unfair to impose upon defendant the burden of proving plaintiff's hypothesized future lack of mitigation.
*756 We recognize that there may be special instances where a plaintiff in an employment case has taken actions before trial that will be likely to diminish her future employability. For example, before trial a plaintiff may retire prematurely while still in good health, surrender her professional license, or switch to a lower-paying career. Such pre-trial conduct could foreshadow a failure to mitigate future wage loss. Even so, such possibilities do not make it proper, as a general rule of law, to impose upon a defendant the burden of proving such a prospective failure. Instead, these are the sorts of past facts that a defendant may bring forward for the jury's consideration, without having an affirmative obligation to do so. If such defense proofs are tendered, plaintiff may then, of course, respond with rebuttal proofs. But the jury charge should not encumber defendants with an automatic burden to prove the unknown, where the unknown largely turns upon plaintiff's own post-trial decisions and matters substantially within her own volition and control.
We agree with plaintiff that an employer, as part of discharging its burden to prove the former employee's failure to mitigate her damages leading up to the time of trial, must identify positions that the employee should have diligently pursued. Goodman v. London Metals Exchange, Inc., 86 N.J. 19, 41, 429 A.2d 341 (1981).[7] Placing such an evidential burden upon the employer is both fair and logical in the retrospective context of back pay. In that backward-looking mode, the employer can point to historical data concerning the past job market. The employer can also point to the plaintiff's actual past behavior and her level of diligence in maximizing her earnings from the time of her discharge to the time of trial. However, we reject plaintiff's argument that the placement of such an evidential burden upon the employer should carry forward into the future as to front pay.
It is unfair to compel the employer to forecast what lucrative jobs will, in fact, be obtainable in the future market and to further demonstrate to the jury that plaintiff will not pursue them. Rapid changes in technology and in the global economy make it exceedingly difficult to predict what jobs will be available next month, let alone next year and in the years ahead. Economists disagree greatly in making such prognostications. Such prospective events are far too elusive to require an employer to prove affirmatively.
In sum, the rigors involved in proving lack of mitigation by the employee change dramatically when the timeline is shifted from the past in determining back pay to the future in determining front pay. That fundamental difference warrants taking a different approach in the front pay mitigation context.
Although not directly on point because they are not LAD cases, several other New Jersey tort and employment cases support this line of reasoning. Instructive is Dombroski v. City of Atlantic City, 308 N.J.Super. 459, 469, 706 A.2d 242 (App.Div.1998), a personal injury case, in which we observed that in establishing future damages stemming from diminished earnings capacity, a plaintiffnot a defendantmust introduce evidence showing a *757 "`reasonable probability that his injuries will impair his future earning capacity, and sufficient factual matter upon which the quantum of diminishment can reasonably be determined[.]'" (Quoting Coll v. Sherry, 29 N.J. 166, 176, 148 A.2d 481 (1959)); see also Donelson, supra, 206 N.J. at 258, 20 A.3d 384; Frugis v. Bracigliano, 177 N.J. 250, 285, 827 A.2d 1040 (2003); Lesniak v. Cnty. of Bergen, 117 N.J. 12, 20-23, 563 A.2d 795 (1989). In personal injury cases, the plaintiff has the burden of proving the permanency or other likely duration of her injuries. See Model Jury Charge (Civil) 8.11(C), "Loss of Earnings" (2010).
The law also recognizes that, as to what has already occurred, a plaintiff bears the burden of producing evidence of lost income as part of her damages. In most cases, past lost income will be proven initially by the difference between what the plaintiff would have earned if her employment continued as expected, and what she actually earned. Once the plaintiff produces evidence of her past lost income in that manner, the defendant must affirmatively prove that she could have earned more in alternative employment, but that she failed to mitigate her damages.
As to future damages, however, a plaintiff has not met her initial burden of proving her lost income unless she presents evidence to prove what she would have earned had she not suffered the wrong committed by defendant, how long she would have continued to receive those earnings, and a reasonable likelihood that she will not be able to earn that amount in the future, such as through alternative employment. Cf. Picogna, supra, 143 N.J. at 403, 671 A.2d 1035 (noting the remand of that case to determine a reasonable time period of future economic damages). The last element of a plaintiff's proofs we have described is the equivalent of proving permanency or reasonable duration of the injury and resultant damages caused by the defendant's unlawful discrimination or retaliation, taking into consideration whether the position with defendant would have ended or plaintiff would have left the company on her own accord in the absence of discrimination.
Plaintiff contends that personal injury and employment cases do not bear on situating the burden of proof on such damages issues because they do not arise under the LAD, a statute that has strong remedial objectives to combat discrimination. Plaintiff maintains that the LAD's strong public policies would be improperly diluted if an employer were relieved of having the burden of proving a plaintiff's failure to mitigate in the future. The key New Jersey case relied upon by plaintiff in this regard is Goodman, supra, 86 N.J. at 24-28, 429 A.2d 341, an LAD case arising out of an investigation of an employer's discriminatory practices by the Division on Civil Rights. As part of its discussion of the LAD's remedial scheme in Goodman, the Court noted that mitigation is an affirmative defense by an employer and that the ultimate burden of proof of persuasion as to that issue rests with the employer. Id. at 40-41, 429 A.2d 341. However, Goodman does not mention the term "front pay," nor does it expressly extend the employer's burden of proof to future wage loss.[8]
We do not see a reasoned basis for sparing an LAD plaintiff the burden of *758 proving that her compensable injuries are permanent or otherwise will endure into the future for a reasonably likely time. A plaintiff's burden of proving the probability that damages will occur in the future has been a basic principle of civil law in a variety of contexts.[9] Those fundamental principles also must apply here.
Having considered these and the various authorities cited to us, we conclude that it was error for the trial judge to have instructed the jury, over defense counsel's objection, that defendant bore the burden of proving a failure to mitigate future damages as to plaintiff's front pay claim. We do not fault the trial judge for this mistake, as our model charges are silent on the burden placement, and the case law on that discrete subject to date has been sparse and unenlightening.[10] Nor do we fault the parties' lawyers, who reasonably took divergent positions on this unsettled legal issue under the LAD in the 2006 and 2007 charge conferences.
Relieving an employer from bearing such a burden does not conflict with the anti-discrimination policies of the LAD. Employees may still collect front pay in LAD cases where they establish a sound and reasonable basis for projecting future economic harm. They will retain, as they have always possessed, the ultimate burden of proving all of their claimed damages by a preponderance of the evidence. In *759 making that assessment, jurors will be spared the confusing task of trying to understand how a defendant could prove, with any assurance, that a plaintiff really will not do something in the future.
This leads us to consider what sort of instruction should take the place of the future mitigation charge that was provided by the trial court here. As a more general matter, we refer this issue to the broader perspectives of the Supreme Court's Committee on Model Civil Jury Charges. But because we are ordering a retrial on front pay and related damages issues, we offer the following discussion by way of guidance to the trial court.
It is important to distinguish between a "conduct" burden pertaining to future mitigation, and an "evidentiary" burden. There is no dispute that in all wrongful discharge cases brought under the LAD, a plaintiff who seeks wage losses has a "conduct" burden to undertake reasonable measures to mitigate her damages. See, e.g., Geldreich v. Am. Cyanamid Co., 299 N.J.Super. 478, 488, 691 A.2d 423 (App.Div.1997). The more difficult question that we have been exploring is whether an "evidentiary" burden should also be identified and, if so, which party bears that burden. In O'Lone v. Department of Human Services, 357 N.J.Super. 170, 181-82, 814 A.2d 665 (App.Div.2003), a civil service case, we articulated the following burden-shifting construct with respect to an employee's alleged failure to mitigate past losses of earnings for the purposes of calculating back pay:
In the absence of an administrative rule that sets forth the employee's and the appointing authority's evidentiary burdens in a case where an appointing authority claims that a back pay award should be denied or reduced due to the employee's failure to seek substitute employment, we conclude, in conformity with the general rule governing the failure-to-mitigate defense that the appointing authority should bear the initial burden of presenting evidence of the employee's failure-to-mitigate. ... However, because the reason for the employee's separation from service in this kind of case is the employee's own misconduct rather than the appointing authority's wrongful act, we conclude that the appointing authority may discharge its initial burden by presenting evidence that the employee failed to seek any substitute employment or, alternatively, that suitable substitute employment was available that the employee did not obtain. If the employer makes either of these showings, the burden then shifts to the employee to present evidence that suitable substitute employment was unavailable or that the employee was unable to obtain such employment despite diligent efforts. Based on this evidence, the Board must then determine whether there was suitable substitute employment the employee could have obtained had he or she made a diligent search. If the Board makes this finding, the back pay award should be reduced by the amount the employee could have earned in that employment.
[(Emphasis added) (citations omitted).]
For the reasons we have already expressed, this burden-allocating construct for back pay does not sensibly fit the front pay context, given the totally prospective nature of the latter remedy and the volition-dependent uncertainties of the future. We thus do not endorse the O'Lone model, which deals solely with back pay mitigation, as a method of instructing the jury about who bears the burden of proving or disproving mitigation as to front pay.
Defendant's arguments implicitly suggest that the burden of proof as to future mitigation should instead be imposed on *760 the LAD plaintiff. That alternative is also problematic. Such an approach would undoubtedly encourage plaintiffs to attempt to meet such a burden by taking the stand and vowing to "pursue all reasonable higher-paying employment opportunities in the future," or some other formulaic incantation. That sort of promise, albeit one made in court and under oath, does not furnish particularly useful evidence to a jury in sorting out the future mitigation issue.
A person's statement of future intent conceivably may have some probative value, but, as the law also recognizes, such proclamations are sometimes not carried out. See Biunno, Weissbard, & Zegas, 1991 Supreme Court Committee Comment to N.J.R.E. 803(c)(3) (2011) (noting the scholarly debate over the so-called "Hillmon[11] doctrine" and the related hearsay exception for statements of future intent, indicating that New Jersey law injects a "good faith" limitation in the applicable hearsay rule to authorize the exclusion of questionable statements of future intent). Although a plaintiff might be in a more informed position to predict her future diligence in pursuing employment opportunities than her former employer, her self-serving predictions on that topic, even if sincere, may be conjectural at best.
We conclude that the preferred solution is to eschew an explicit jury instruction that places upon either party an evidential burden of proving, or disproving, a plaintiff's post-trial fulfillment of her duty to mitigate damages.[12] Rather, the preferable approach is to require that the plaintiff prove the likely duration of her future lost income, without expressing that evidential burden in terms of "mitigation." Initially, the jury simply can be told that plaintiff generally bears the burden of proving all of her damage claims by a preponderance of the evidence and that such a general burden extends to front pay. The jury can further be advised that in assessing such a front pay claim, they should keep in mind that plaintiff will bear an ongoing obligation to reasonably mitigate her damages in terms of her future conduct, see Geldreich, supra, 299 N.J.Super. at 488, 691 A.2d 423, and that the jury should fairly consider any proofs that might have been adduced on the subject. The jurors can also be advised that neither party bears a specific burden of demonstrating that such future mitigation will or will not occur, but that such an assessment instead rests in their sound judgment, based on the evidence as a whole and the reasonable inferences from it.
However, the court's instructions also must adequately inform the jury that the plaintiff bears the burden of proving that the damages she claims are either permanent or will last for a reasonably determinable time. In assessing such permanency or a reasonable time short of permanency, the jury may take into consideration *761 all the evidence, including the testimony of the plaintiff and any experts that testified on the subject of the likelihood that the plaintiff will continue to earn less in the future than anticipated in her prior employment. Either party may, but is not required to, present the testimony of an employability expert to assist the jury in attempting to predict and quantify such an alleged future loss of income. Either party may also rely upon admissible statistical evidence, as was presented in this case by defendant.
This overall approach, although it is not symmetrical with the proof burdens associated with back pay mitigation, is preferable to the competing alternatives espoused by the parties. In any event, we commend this issue for further consideration by the trial court on remand with the further input of counsel on the exact phrasing of the charge in light of our opinion. More broadly, we refer the issue to the Model Civil Jury Charge Committee to develop a recommended charge for such cases to assist the bench and the bar.
Proper jury instructions are essential to a fair trial. "[A] jury charge `should set forth an understandable and clear exposition of the issues.'" Mogull v. CB Commercial Real Estate Group, Inc., 162 N.J. 449, 464, 744 A.2d 1186 (2000) (quoting Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 210, 485 A.2d 305 (1984)). Because the trial court's charge erroneously imposed a burden upon defendant to prove that plaintiff would not reasonably mitigate her future wage losses, the front pay award of $3,650,318 produced by that flawed charge must be set aside. The fact that the jury awarded the exact same amount in front pay that had been calculated by plaintiff's economist signals that the jurors found that defendant had not met its improvidently-imposed burden of proving future non-mitigation. In addition, although the jury charge on front pay referred to "the reasonable period required by [plaintiff] to reestablish her rightful place in the job market," it did not make sufficiently clear that plaintiff bore the specific burden of establishing that reasonable period.
A different outcome on front pay might well have been attained in this case had the jury been charged that plaintiff bore the specific burden of proving a reasonably likely period of time into the future that her loss of earnings would continue and had the jury not been incorrectly charged that defendant bore an affirmative burden of disproving plaintiff's future mitigation. Cf. Patton v. Amblo, 314 N.J.Super. 1, 8-10, 713 A.2d 1051 (App.Div.1998) (finding that reversible error stemmed from an improperly-fashioned civil jury charge). The matter therefore must be tried again, with appropriate instructions.

C.
Because we are thus remanding for a new trial on front pay, little needs to be said about defendant's remaining arguments related to front pay and other damages. We reject defendant's claim that no reasonable jury could award plaintiff front pay under the facts of this case. Giving plaintiff, as we must, all reasonable inferences from the factual record, see Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969), there was a rational basis for a fact-finder to conclude that she is entitled to front pay for a reasonable period of time.[13] In this regard, we point out, although not in an exhaustive manner, several *762 pertinent factors. Plaintiff began working for defendant in an entry-level position in 1980. She was promoted numerous times and eventually became executive director of HR. Her expertise was valued by the company, and as of 1999, nine HR professionals reported to her. Her responsibilities increased, and she began to work directly with board members. At the time of the lost promotion, plaintiff was fifty-two years old and had been working for defendant for twenty-three years. She began her job search in September 2004, within a few months of her termination, and began working for another company in December 2004. Although the parties dispute the precise tallies, she applied for several jobs and went on one or more interviews. At the time of her termination, defendant was paying her approximately $200,000 in salary and benefits, and her compensation package at her new employer was $96,000. These and other facts in the record, viewed in a light most favorable to plaintiff, justify the front pay issue being presented to the jury at a new trial.
We need not comment upon defendant's argument that the quantum of front pay awarded to plaintiff at the second trial was manifestly excessive, as that question is now academic in light of our order for a retrial on front pay. Nor do we think that the after-acquired evidence doctrine necessarily bars plaintiff's claims of future economic loss; the hotly-contested issue about whether plaintiff would have been terminated by defendant anyway, regardless of any retaliation, was properly left for the jury to assess.

D.
We detect no error in the admission of the expert testimony of plaintiff's economist, Dr. Marcus, on the front pay issues. Although Dr. Marcus's analysis could have been more complete in some respects, it amply met the admissibility requirements for expert opinion under N.J.R.E. 702. See also Hisenaj v. Kuehner, 194 N.J. 6, 15-16, 942 A.2d 769 (2008). It was not necessary for Dr. Marcus, as a well-qualified economist quantifying plaintiff's alleged losses, also to be an expert on employability, which was a separate issue that was subject to the parties' opposing positions about the facts and the reasonable inferences that could be drawn from them. Although Dr. Marcus's projection of future lost income through plaintiff's anticipated retirement date was legitimately and strenuously questioned by the defense, cf. Picogna, supra, 143 N.J. at 403, 671 A.2d 1035, the trial court did not abuse its discretion in allowing the jury to evaluate the credibility of that projection. See also N.J.R.E. 403 (affording trial courts the discretion to exclude or allow relevant evidence having probative value where it is substantially outweighed by countervailing factors); Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492, 734 A.2d 1147 (1999) (instructing appellate courts to afford deference to trial courts on questions of inadmissibility under N.J.R.E. 403 unless there is a "palpabl[e] abuse[] [of] discretion" and a "manifest denial of justice").
Dr. Marcus admittedly had no expertise in employability and did not offer an opinion regarding why plaintiff's inability to earn income as she anticipated in her employment with defendant would continue for the rest of her working life. The jury apparently accepted that premise of his testimony without direct and specific evidence presented by plaintiff to support it. The jury should have been instructed that it must determine whether plaintiff proved that Dr. Marcus's projection was consistent with a reasonable time period for plaintiff to earn income comparable to what she would have earned with defendant *763 if she had not been discharged. Cf. Picogna, supra, 143 N.J. at 403, 671 A.2d 1035.
Defendant, in fact, countered with its own economic expert, Dr. Brian Sullivan, who opined that a person in plaintiff's position could be expected to recover her prior level of earnings within five years and that plaintiff's economic damages ceased when she obtained alternative employment. But Dr. Sullivan also admitted that he was not testifying as an employability expert and instead was relying upon general statistical information, which the jury apparently rejected.
The jury was appropriately called upon to evaluate the parties' diametrically-opposed positions on this subject, and to consider the variance between Dr. Marcus's pessimistic assumptions and the more optimistic ones of Dr. Sullivan. However, as we have already noted, the jury was not instructed correctly as to which party bore the burden of proving the duration of plaintiff's future[14] loss of income. The parties therefore shall be permitted, at the discretion of the trial court, to amplify these expert proofs before the third trial to address the issues that we have outlined and more fully develop the record.
Lastly, Dr. Marcus's presentation of "bottom line" damage calculations in his charts, which were provided to the jury, did not run afoul of the precepts set forth in DeHanes v. Rothman, 158 N.J. 90, 101-03, 727 A.2d 8 (1999). The jury was properly cautioned by the trial judge that they could reject those numbers.

E.
Because the front pay issue is inextricably intertwinedwith the quantum of punitive damages awarded (which mirrored the total compensatory damages), we must also vacate the award of punitive damages and remand it to be tried anew, although, consistent with the Supreme Court's holding, plaintiff's entitlement to argue punitive damages before the jury is now the law of the case. Additionally, the awards of prejudgment interest, counsel fees, and the precise amount of the negative tax consequences must abide the outcome of a new trial. All other facets of the final judgment, including the determination of liability, the jury's back pay award through the time of the second trial,[15] and the sums awarded in lost promotion and emotional distress damages, are hereby affirmed.
Affirmed in part, vacated in part, and remanded in part. We do not retain jurisdiction.
NOTES
[1] The Court's test examined (1) how the employee gained access to or possession of each document; (2) what the employee then did with the document; (3) the document's nature and content; (4) whether the company had a clearly-identified policy regarding confidentiality; (5) whether the document's disclosure was unduly disruptive to the employer's ordinary business; (6) whether the employee's expressed reasons for copying the document were particularly compelling; (7) the impact of the broad remedial purposes of the LAD; and (8) the effect, if any, that protecting the document would have upon the balance of the employer's and the employee's legitimate interests. Id. at 269-71, 8 A.3d 209.
[2] Other jurisdictions are divided on the question of whether the assessment of front pay under various anti-discrimination statutes is a function of a judge or a jury. Several cases treat front pay as a wholly equitable remedy distinct from compensatory damages that is more properly awarded by a judge rather than a jury. See Traxler v. Multnomah Cnty., 596 F.3d 1007, 1014 (9th Cir.2010); Newhouse, supra, 110 F.3d at 643 (8th Cir.). Other cases hold that a determination of the amount of front pay damages may be made by a jury. See Roush v. KFC Nat'l Mgmt. Co., 10 F.3d 392, 398 (6th Cir.1993), cert. denied, 513 U.S. 808, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994); Hansard v. Pepsi-Cola Metro. Bottling Co., 865 F.2d 1461, 1470 (5th Cir.1989). The Third Circuit Court of Appeals has recognized that a jury may award front pay in certain contexts and that the jury's award of front pay should not be disturbed on appeal unless the record is devoid of any proof to support it. See Feldman v. Philadelphia Hous. Auth., 43 F.3d 823, 833 (3d Cir. 1994); see also Anastasio v. Schering Corp., 838 F.2d 701, 708-09 (3d Cir. 1988) (upholding a jury's determination regarding front pay).
[3] See Modern Federal Jury Instructions (Civil) for the 3d Circuit 5.4.4, "Title VII Damages Front Payfor Advisory or Stipulated Jury" (2011).
[4] We note that defendant's contention essentially is that plaintiff lowered her sights too much, rather than too little, by accepting a much lower-paying job in December 2004 and not pursuing a higher-paying position thereafter.
[5] See Fashauer v. N.J. Transit Rail Operations, Inc., 57 F.3d 1269, 1288 (3d Cir.1995) (observing, in a case brought under the Federal Employers' Liability Act by a railroad worker who sought damages for past and future lost earnings, that a "defendant is obligated to prove [plaintiff's] failure to mitigate, but that burden only applies to damages for past loss of earningsfrom the time of injury to the time of trial").
[6] See generally Christopher B. Mueller & Laird C. Kirkpatrick, Evidence 106 (4th ed. 2009) (noting that, among other things, burdens of proof "are allocated to put them on the party most likely to be able to carry them, meaning the party most likely to have access to the proof"). See, e.g., Gomez v. Toledo, 446 U.S. 635, 640-41, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572, 578, (1980) (placing the burden of proving qualified immunity in a civil rights case upon the defendant because such immunity "depends on facts peculiarly within the knowledge and control" of that party).
[7] See also Model Jury Charge (Civil) 8.45, "Breach of Contract, C. Mitigation of Damages" (1993) (noting that "[t]he burden of proof is on the defendant to show that the plaintiff could reasonably have avoided or minimized his/her damages" and that "[i]n the employment example, the defendant employer has the burden of showing the earnings the employee could reasonably have realized had the employee taken advantage of available substitute employment").
[8] In this regard, we note that the Third Circuit's model jury charge on front pay in Title VII cases does not impose upon an employer a burden to prove that its former employee will fail to mitigate her damages in the future. See Modern Federal Jury Instructions (Civil) for the 3d Circuit 5.4.4, "Title VII DamagesFront Payfor Advisory or Stipulated Jury" (2011).
[9] See, e.g., Frugis, supra, 177 N.J. at 283-87, 827 A.2d 1040 (noting, in a personal injury case, that "[a] plaintiff must present evidence that there is (1) `a reasonable probability that his injuries will impair his future earning capacity' and (2) `sufficient factual matter upon which the quantum of diminishment can reasonably be determined'" (quoting Coll, supra, 29 N.J. at 176, 148 A.2d 481)); see also Donelson, supra, 206 N.J. at 258, 20 A.3d 384 (citing the same two-prong test used in Frugis); Patel v. Soriano, 369 N.J.Super. 192, 242-43, 848 A.2d 803 (App.Div.) (noting that to establish a tortious interference with a prospective economic advantage case, a plaintiff bears the burden of proving, among other things, that he or she "had a reasonable expectation of advantage from a prospective contractual or economic relationship"), certif. denied, 182 N.J. 141, 861 A.2d 845 (2004); V.A.L. Floors, Inc. v. Westminster Cmts., Inc., 355 N.J.Super. 416, 424-27, 810 A.2d 625 (App.Div.2002) (noting a plaintiff's obligation, in a breach of contract case, of establishing a "reasonably accurate and fair basis for the computation of lost profits"; and quoting Restatement (Second) of Contracts § 352, comment b ("[e]vidence of past performance will form the basis for a reasonable prediction as to the future")); Model Jury Charge (Civil) 8.11(C), "Loss of Earnings" (2010) (stating that "[plaintiff] has the burden to prove, by a preponderance of the evidence, his/her net income and the probable loss of future earnings"); Model Jury Charge (Civil) 8.11(I), "Future Medical Expenses" (1997) (stating that "[i]t is the burden of the plaintiff to prove, by a preponderance of the evidence, the probable need for future medical care and the reasonableness of the charge for future medical care").
[10] Indeed, none of the cases cited by the trial judge in support of his ruling to charge the jury that defendant bore the burden of proving future non-mitigation address that precise burden issue in depth. See Robinson, supra, 982 F.2d at 897, 899 n. 10 (briefly noting that the defendant had the burden to prove that the plaintiff did not mitigate damages, but in a case where the plaintiff "waived any claim to front pay"); Bianchi, supra, 80 Fed.Appx. at 237-38 (citing Robinson in support of its decision to place the burden of proving future non-mitigation upon the defendant, and not addressing the volitional and other conceptual concerns that we have explored in this opinion); Anastasio, supra, 838 F.2d at 707-09 (noting the employer's burden to prove that the plaintiff "failed" to mitigate damages, repeatedly using the past tense in its discussion of the concept); Prine, supra, 95 F.Supp.2d at 1012-14 (generally noting that the "burden of proof on the mitigation issue rests with the defendant-wrongdoer," but then repeatedly using the past tense in describing the absence of proof by the employer that the plaintiff "failed" to mitigate her damages).
[11] Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892).
[12] Notably, the Third Circuit's model charge on front pay in Title VII cases does not explicitly place a burden upon a plaintiff to prove that she will mitigate her wage loss in the future. The instruction states that a plaintiff's lost future earnings from her former employment should be offset by "the amount of earnings and benefits [she] will receive from other employment during that [future] time." Model Federal Jury Instructions (Civil) for the 3d Circuit 5.4.4, "Title VII DamagesFront Payfor Advisory or Stipulated Jury" (2011). The charge notes that a plaintiff has "the burden of proving these damages by a preponderance of the evidence." Ibid. The front pay charge does not, however, refer to mitigation concepts. Nor does it specifically address the possibility that a plaintiff could earn more in the future, through more diligent efforts, than the earnings that she projects.
[13] By the same token, we do not suggest that it would be irrational for a jury on retrial to determine, conversely, that plaintiff's proofs of future loss are unconvincing and do not warrant front pay.
[14] Although some of the concepts regarding "reasonable duration" also apply to the back pay context, we do not regard the back pay award in this case to be sufficiently tainted to warrant reexamination by a new jury. The manifest prejudice to defendant stemming from this particular flaw in the charge was most pronounced as to the $3.65 million front pay award. We do not detect an equivalent degree of prejudice as to the back pay period through February 2007, as to which the proofs concerning plaintiff's earnings were more specific and definitive. Moreover, the burden of proving plaintiff's past failure to mitigate her back pay was appropriately placed on defendant.
[15] Given the intervening passage of time, what had been a portion of the "front pay" period at the time of the verdict in February 2007 through today will now be within an additional "back pay" period when the case is retried.