NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1715
_____

SANTOS ANDUJAR

v.

GENERAL NUTRITION CORPORATION,

Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-14-cv-07696)
District Judge: Honorable Joel Schneider
_____

Submitted April 5, 2019
Before: CHAGARES and HARDIMAN, *Circuit Judges*, and GOLDBERG, *District Judge*.[*]

(Filed: April 12, 2019)
_____

OPINION[**]
_____

_____

[*] Honorable Mitchell S. Goldberg, District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

General Nutrition Corporation appeals a $258,926 judgment in favor of Santos Andujar, a former GNC store manager who sued for age discrimination after the company fired him. Because GNC's arguments on appeal are insufficient to disturb the jury's verdict, we will affirm the orders of the District Court.

I

Andujar was a GNC store manager for some thirteen years before he was terminated at age 57. He was evaluated annually through GNC's Performance Evaluation Process (PEP). The maximum score for a PEP was 500, with 300 as the passing score. GNC also audited inventory and recordkeeping at each store through its Critical Point Audits (CPA). A passing CPA score was 90%, but Andujar's store earned scores of 88% in 2010, 68% in 2011, 79% in 2012, and 88% in 2013.

On January 23, 2014, Andujar received a failing PEP score of 287. That same day, GNC manager Christian Gosseaux imposed a Red Store Action Plan, which gave Andujar 30 days to make improvements. Approximately one month later, Gosseaux fired Andujar for failing to comply with the Action Plan. GNC replaced him with a man in his twenties.

Andujar sued GNC in New Jersey state court, alleging wrongful termination in violation of the New Jersey Law Against Discrimination (LAD). GNC removed the case to the District Court, which exercised jurisdiction under 28 U.S.C. § 1332(a) and § 1441.

2

After GNC's motion for summary judgment was denied, the case was tried to a jury, which awarded Andujar $258,926 (including $123,926 in back pay, $60,000 in front pay, and $75,000 in emotional distress damages). After the District Court entered final judgment, GNC moved for judgment as a matter of law under Rule 50(b), or, alternatively, for a new trial under Rule 59. The Court denied both motions and this timely appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

## II

GNC challenges many aspects of the District Court's rulings. We address each argument in turn, but focus our attention on GNC's principal argument: whether the comparator evidence offered by Andujar could establish discriminatory treatment.

## A

Having been discharged at age 57 and replaced by a man in his twenties, Andujar had little difficulty establishing a prima facie case of age discrimination. Because his performance was sub-par, however, GNC articulated a legitimate nondiscriminatory reason to fire him. So the trial turned on the question whether Andujar could prove that GNC's stated reason—poor performance—was pretextual.

Companies have the right to discharge their employees for poor performance, but they can't excuse the shortcomings of younger workers while bringing down the hammer on older workers. Consistent with that principle, Andujar emphasized that while he was one of many store managers in his region with a failing PEP score, he was the only one

3

placed on an Action Plan or fired within 30 days. Specifically, five managers[1] had failing PEP scores lower than Andujar's, but none was put on an Action Plan or fired. All five were younger workers, ranging from 25 to 34 years of age.

GNC responded to this evidence by arguing that the District Court erred when it found that because the proffered comparators were store managers, "the jury could infer they had the same or similar job functions and the same level of supervisory responsibilities as [Andujar]." GNC Br. 15. Noting that some of the managers had been working a short time, engaged in different misconduct, and none of them had failing CPAs, the Court "mistakenly submitted the comparator evidence to the jury." *Id.* at 15, 20–21. We disagree.

Comparators must be similarly situated, not identical. *See Peper v. Princeton Univ. Bd. of Trustees*, 389 A.2d 465, 480 (N.J. 1978) (noting that "similarly situated" in the promotion context means "those persons possessing equivalent qualifications and working in the same job category as plaintiff" and that the "trial judge will have to make a sensitive appraisal in each case to determine the most relevant criteria" for evaluating "similarly situated" status). Here, the comparators were all managers (or assistant managers) in the same region as Andujar who received failing PEP scores. Those similarities sufficed under New Jersey law for the jury to decide whether Andujar and the

---

[1] GNC argues Kyle Pauley should not be used as a comparator because, as an assistant manager, he had different job functions and responsibilities. But Gosseaux testified that assistant managers would receive PEP scores.

other store managers were similarly situated and, if so, whether GNC treated them differently because of age. So the District Court did not abuse its discretion when it submitted those questions to the jury. *See Catalane v. Gilian Instrument Corp.*, 638 A.2d 1341, 1352 (N.J. Super. Ct. App. Div. 1994) (finding that the trial court did not err in leaving the question of whether plaintiff was similarly situated to other employees to the jury).[2]

B

GNC also contends the District Court should have granted a new trial under Rule 50(b) because it committed legal error when it allowed Andujar to offer into evidence a document that was not listed in the Court's Rule 16(e) joint pretrial order. According to GNC, the Court failed to apply the correct legal standard, which permits modification of the final order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). The document at issue—Exhibit P4(A)—was produced by GNC in response to Andujar's discovery request for information about managers in his region who received failing PEP scores and provided the basis for the comparator grid Andujar used at trial.

GNC's argument mischaracterizes the District Court's analysis. First, the Court explicitly cited the correct legal standard when it noted: "the standard for amending a Final Pretrial Order is manifest injustice." App. 265. The Court then considered several

---

[2] Our holding that the store managers could serve as valid comparators disposes of GNC's appeal of the denial of its Rule 50(b) and 59 motions to the extent they were based on that issue.

factors relevant to determining whether admission was required under that standard. The District Court found that: the document did not surprise GNC; if there was prejudice to GNC, testimony from its witness (Gosseaux) could cure it; the jury would decide its probative value; and Andujar inadvertently left it off the order. *See Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1236 (3d Cir. 1994) (listing the factors for reviewing a district court's decision to permit introduction of exhibits not identified in the pretrial order). And although Andujar did not list Exhibit P4(A) in the final pretrial order, he referenced it and alluded to it elsewhere. Accordingly, the District Court did not commit legal error when it denied GNC's motion for a new trial based on its manifest injustice analysis. *See Lightning Lube Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (noting we exercise plenary review over an order denying motion for new trial based on application of legal precept).

## C

GNC also contends it is entitled to a new trial because the District Court's curative statement to the jury—about the veracity of defense counsel's claim that Andujar was a "felon" in closing arguments—prejudiced GNC by belittling its counsel and "eviscerat[ing] one of the key defense positions on the relative credibility of the parties." GNC Br. 21–22. GNC argues that rather than clarifying "not all crimes are felonies, the [C]ourt's instruction completely disregarded the admission of guilt by Andujar, and . . . painted defense counsel as a liar." *Id.* at 22. In GNC's view, the instruction was advocative and one-sided, warranting a new trial.

6

GNC misconstrues the Court's curative instruction. After GNC's counsel called Andujar a "felon," the Court instructed the jury there was "absolutely no evidence in the record to support that fact" and that it "was a misstatement." App. 304. The Court told the jury to disregard the statement, which was only proper since it was untrue. This curative statement does not rise to the level of "confus[ing] or mislead[ing] the jury, or becom[ing] so one-sided as to assume an advocate's position." *Am. Home Assur. Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 327 (3d Cir. 1985). The Court did not eviscerate GNC's argument about Andujar's credibility by correcting defense counsel's misstatement that Andujar was a felon, so there was no abuse of discretion on that point. *See United States v. Urban*, 404 F.3d 754, 779 (3d Cir. 2005).

D

GNC also challenges the damages award. This is a difficult task because the "verdict may be disturbed only if it is so grossly excessive that it shocks the judicial conscience, or if it is unconstitutionally excessive because it is predicated on an impermissible basis." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 391–92 (3d Cir. 2016) (citations omitted).

GNC claims the jury's back pay award of $123,926.00 was excessive because Andujar did not make a reasonable effort to obtain comparable employment to mitigate the damages he sustained. GNC notes that Andujar could have done so by returning to GNC as a salesperson.

7

The employer has the burden of proving the plaintiff failed to mitigate back pay damages under the LAD. *Quinlan v. Curtiss-Wright Corp.*, 41 A.3d 739, 755–56 (N.J. Super. Ct. App. Div. 2012). And a plaintiff "need not go into another line of work, accept a demotion, or take a demeaning position" to mitigate his damages. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982). Here, GNC did not show that Andujar failed to mitigate, and he did not need to take a salesperson position at GNC which, whether or not it could in theory pay more than his old job, is not "substantially equivalent to the one he was denied," *id.* at 232. Moreover, Andujar presented evidence showing that he tried to mitigate his damages by searching for work online and by finding work through a temporary agency. For these reasons, the back pay award was not excessive.

GNC also challenges the front pay award. But Andujar presented evidence on all relevant factors required for examining a front pay award. *See Quinlan*, 41 A.3d at 749 (including these factors: (1) plaintiff's potential future in the position; (2) his work and life expectancy; (3) his duty to mitigate damages; and (4) the availability of similar jobs and the time needed to find substitute work; (5) discount tables for the present value of future damages; and (6) other factors relevant to prospective damage awards). Andujar testified that he was dedicated to GNC and planned to stay there; described his job search and inability to find similar work; and presented evidence about his new job, which paid

him less than he was making at GNC. For that reason, the jury had sufficient evidence to award Andjuar $60,000.00 in front pay damages.[3]

Finally, GNC claims that because Andujar did not sufficiently establish his emotional distress, the evidence does not support the jury's $75,000 award. But under the LAD, emotional distress damages are recoverable for embarrassment and humiliation. *Klawitter v. City of Trenton*, 928 A.2d 900, 920 (N.J. Super. Ct. App. Div. 2007). Andujar testified that he was prescribed medication for his depression after his termination, and his wife also testified that he was withdrawn, anxious, and less affectionate. This testimony supports the jury's award for emotional distress, which was not "so disproportionate to the injury as to shock the conscience." *Rendine v. Pantzer*, 661 A.2d 1202, 1214 (N.J. 1995).[4]

---

[3] GNC also contends the damages awards were excessive "because Andujar admitted [in a deposition] he lied on his job application by failing to disclose a criminal conviction." GNC Br. 27. But GNC did not satisfy its burden to show that Andujar "would have been terminated as soon as the withheld information was discovered." *Cicchetti v. Morris Cty. Sheriff's Office*, 947 A.2d 626, 629 (N.J. 2008). GNC introduced as evidence only its company manual, which requires discharge for the "falsification of any company required records." App. 108. It produced no evidence that a job application qualifies as a "company required record[]," *id.*, nor did it provide any testimony from GNC representatives that Andujar would have been fired upon learning this information.

[4] GNC made other arguments that can be addressed summarily. Its challenge to the denial of its motion for summary judgment is a nonstarter. *See Ortiz v. Jordan*, 562 U.S. 180, 183–84 (2011) (explaining that a party cannot "appeal an order denying summary judgment after a full trial on the merits"). Its argument that Juror 8 should have been excused for cause fares no better. The Court found Juror 8's skepticism about the judicial system lacking in credibility, and there was no motion to strike Juror 8 for cause. The decision to allow Juror 8 to participate was not error, much less plain error. *See United States v. Mitchell*, 690 F.3d 137, 145 (3d Cir. 2012).

\*    \*    \*

For the reasons stated, we will affirm the District Court's orders.